McKEY v. SWENSON.

1. CORPORATIONS—ASSIGNMENTS FOR BENEFIT OF CREDITORS—DOES
   NOT OPERATE AS DISSOLUTION OF CORPORATION.

   An assignment to a trustee of all of the property of a cor-
   poration, which provided for the payment of the creditors
   and for the return to the corporation of any excess, did
   not operate as a dissolution of the corporation.[1]

2. ASSIGNMENTS FOR BENEFIT OF CREDITORS—VALIDITY OF ASSIGN-
   MENT GOVERNED BY LAW OF DOMICILE—FOREIGN CORPORATIONS.

   The law of the domicile of a foreign corporation doing
   business in Michigan governs as to the validity of an
   assignment made by it for the benefit of its creditors.[2]

3. SAME — COMMON-LAW ASSIGNMENT VALID IN DOMICILE OF
   FOREIGN CORPORATION VALID IN MICHIGAN.

   Although an assignment for the benefit of creditors made
   by an Illinois corporation doing business in Michigan
   does not conform to statutory requirements in either State,
   where it appears by the decisions of the Illinois courts
   that the statute in that State in reference thereto has
   been suspended by the National bankruptcy act, and that
   a common-law assignment is valid in Illinois, it must be
   held valid in Michigan under the rule of comity.[3]

4. CORPORATIONS—SALARIES OF OFFICERS MAY NOT BE VOTED BY
   THEMSELVES—RATIFICATION.

   Action by members of the board of directors, who held a
   majority of the stock of a corporation, in fixing their own
   salaries, was void and therefore could not be ratified by
   the stockholders.[4]

5. SAME—PRINCIPAL STOCKHOLDERS MAY NOT FIX OWN SALARIES
   AS OFFICERS.

   Large profits of a corporation alone constitute no justifica-
   tion for big salaries for the officers, for net profits belong
   to the stockholders, neither does the fact that officers re-

[1]Corporations, 14a C. J. § 3731 (Anno); [2]Assignments for Bene-
fit of Creditors, 5 C. J. § 231 (Anno); [3]Id., 5 C. J. § 16 (Anno);
[4]Corporations, 14a C. J. § 1908.

On right of officer, director, or stockholder, in absence of special
contract, to compensation for services to corporation, see note
in L. R. A. 1917F, 310.

ceiving such salaries are the principal stockholders bear at all upon their legal right thereto.[5]

**6. ASSIGNMENTS FOR BENEFIT OF CREDITORS — TRUSTEE MAY RECOVER ILLEGAL SALARIES PAID OFFICERS.**

In a suit by the trustee under an assignment by a corporation for the benefit of its creditors, illegal salaries paid to its officers are recoverable as assets of the corporation, and in the absence of any showing as to what salaries would have been reasonable, they are liable for all they received, reaching back to any point within which the corporation may exact refund.[6]

**7. SAME—PROPERTY RIGHTS OF CORPORATION DETERMINABLE—ESTOPPEL.**

In said suit, rights of the corporation in and to property bought on contract by its officers individually and leased to it may be found and fixed, and the submission of the corporation while under the domination of the lessors may not be invoked as a time of sleeping on rights or in bar of relief.[7]

**8. TRUSTS—FRAUD OF DIRECTORS IN PURCHASING PROPERTY RESULTS IN TRUST FOR CORPORATION—USES AND TRUSTS.**

Where directors of a corporation, taking advantage of their fiduciary relations, bought a site on contract and leased it to the company on such terms that, outside of the initial payment, the company would pay for it in five years, the transaction amounted to a fraud upon the company and by reason thereof a court of equity may declare a trust and vest the title in the company, where in equity and good conscience it belongs; there being nothing in the statute of uses and trusts (3 Comp. Laws 1915, § 11565 *et seq.*) to prevent the court from taking such action.[8]

**9. JUDGMENT — WHERE APPEAL PENDING JUDGMENT IN FOREIGN STATE NO BAR TO INSTANT SUIT.**

A judgment in a foreign State against the corporation in favor of one of the defendants for unpaid salary, in which an appeal is pending, constitutes no bar to this suit; there being no final judgment.[9]

**10. ASSIGNMENTS FOR BENEFIT OF CREDITORS—UNSUPPORTED CLAIM NOT RECOGNIZED BY COURTS.**

A claim in the answer of certain defendants that they had

---

[5]Corporations, 14a C. J. § 1909; [6]Id., 14a C. J. § 1921 (Anno); [7]Id., 14a C. J. § 3120; [8]Id., 14a C. J. § 3126; [9]Judgments, 34 C. J. § 1307.

purchased the contract interests of defendant directors, not accompanied by any particulars of said alleged sale, and not supported by evidence, is not entitled to recognition by the court.[10]

Appeal from Wayne; Shepherd (Frank), J., presiding. Submitted April 21, 1925. (Docket No. 19.) Decided October 27, 1925. Rehearing denied April 6, 1926.

Bill by Frank M. McKey, trustee of the Goddard Tool Company, against Samuel R. Swenson and others to establish title to real estate and to recover salaries illegally paid to defendants as officers of the corporation. From a decree for plaintiff, defendants appeal. Modified and affirmed.

*Stevenson, Carpenter, Butzel & Backus* and *Grossberg, Haffenberg & Kopald* (*J. G. Grossberg* and *Charles A. Wagner,* of counsel), for plaintiff.

*Wurzer & Wurzer,* for defendants.

Wɪᴇsᴛ, J. Plaintiff, by virtue of an assignment and indenture, is a common-law trustee for creditors of a foreign corporation, and seeks title in the corporation to certain real estate in this jurisdiction and recovery of illegal salaries claimed to have been received by officers of the corporation. The Goddard Tool Company is an Illinois corporation, admitted to do business here, and in May, 1917, opened a branch plant in the city of Detroit. The matter of a Detroit branch plant had been under consideration some time, for, as early as March 12, 1917, the minutes of a meeting of the stockholders show arrangements had been made to open such a branch factory. These minutes also show that, at a stockholders' meeting March 11, 1918, the plant was in operation, and

"in order to protect the credit of Goddard Tool Com-

---

[10]Corporations, 14a C. J. § 3129 (Anno).

pany, it was deemed advisable by the board of directors that the real estate and building necessary for establishing the plant in Detroit be purchased by three of the directors of your company as individuals and this was accomplished and a lease issued to Goddard Tool Company with an option giving the company the privilege of buying the property at any time. The interests of the company have been very carefully protected with the result that it is not necessary for us to show this investment in fixed assets on the company's balance sheet."

In June, 1922, the corporation owed two Chicago banks large sums, and, by due corporate action and indenture, assigned and conveyed to plaintiff, in trust for the benefit of its unsecured creditors, all of its property and assets, inclusive of equitable rights and choses in action.

In May, 1917, Paul Goddard was president of the corporation, Herbert L. Hochschild, vice-president and treasurer, and Samuel R. Swenson, secretary, and they constituted a majority of the board of directors and were the principal stockholders. May 1, 1917, Goddard, Hochschild, and Swenson purchased on land contract a lot known as No. 370 Harper avenue, Detroit, having a brick building thereon, and an adjoining lot known as No. 1364 Rivard street, having a frame dwelling, for the sum of $26,000, paid $6,000 of their own money on the contract and agreed to pay $20,000 in semi-annual installments of $1,500 or more, all to be paid in five years, with interest at 6 per cent. The same date Goddard, Hochschild, and Swenson executed a 5-year lease of the premises to Goddard Tool Company, reserving, however, the frame dwelling to their own use until a contract "for the sale and purchase of the whole of said premises shall be entered into between said parties as hereinafter provided." The rent was fixed at $4,200 a year, payable in monthly installments, and the corporation was required to pay all taxes, insure the brick building and

keep the premises in repair. The corporation was given the right to purchase the premises upon notice of election to do so, and agreement as to price and terms, but if unable to agree, then the Security Trust Company of Detroit to fix the price at not less than $26,000. The premises were occupied by the corporation, and the rental and taxes paid up to the time of the assignment in June, 1922, and by the assignee before the filing of this bill. Defendant George C. Clark claims to have purchased the contract rights of the other defendants and intervened in the suit. In the circuit decree was entered finding the real estate was purchased in trust for the corporation and cut off all asserted rights of the defendants. The decree also determined salaries received by the defendant officers of the company were illegal, found the amount thereof and awarded recovery. None of the defendants gave testimony. The case is here by appeal of defendants and the points presented will be mentioned in the course of the opinion.

The directors at a meeting on June 27, 1922, premised and resolved:

"Whereas, this corporation has contracted indebtedness, liabilities and obligations to numerous persons, firms and corporations in a large amount, part of which is past due and remains unpaid; and

"Whereas, although this corporation is wholly solvent, its property consists mainly of slow assets so that it is unable immediately to discharge the aforesaid indebtedness, liabilities and obligations without material sacrifice to the corporation, and

"Whereas, it is the opinion of the directors of this corporation that the interests of the creditors and the stockholders of this corporation would best be served by conveying all of the properties, income and assets of the corporation of every kind and nature and wheresoever situated to Frank M. McKey of Chicago, Illinois, as trustee, to operate and control the business and out of the proceeds to pay the said indebtedness, liabilities and obligations of this corporation and thereupon to

reconvey the said properties and assets to the corporation;

"Resolved, That the president or the vice-president and the secretary of this corporation be and they hereby are authorized and directed to execute and deliver to Frank M. McKey, of Chicago, Illinois, as trustee, in the name and on behalf of this corporation and under its corporate seal, a deed of trust in substantially the form submitted to the board of directors at this meeting."

At this meeting Goddard was elected president, Strobridge, vice-president, and Rawson, secretary.

This assignment did not operate as a dissolution of the corporation. The assignment provided for payment of creditors out of the corporate assets and return to the corporation of any excess.

It is claimed the assignment to plaintiff, executed in Illinois, does not conform to statutory requirements in Illinois or this State and plaintiff may not bring suit by virtue thereof. The law of the domicile of the assignor governs and, if the assignment is valid in Illinois, it is, under the rule of comity, valid here. If the common law, unchanged by statute, prevails in Illinois, then the assignment is good.

In *Pogue* v. *Rowe*, 236 Ill. 157 (86 N. E. 207), it was said:

"The National bankruptcy act of 1898 suspended the statute of this State in reference to voluntary assignments for the benefit of creditors (*Harbaugh* v. *Costello*, 184 Ill. 110 [56 N. E. 363, 75 Am. St. Rep. 147]), and the debtor may make a common-law assignment for the benefit of his creditors, which is valid so far as the statutes of this State are concerned (*Howe* v. *Warren*, 154 Ill. 227 [40 N. E. 472]; *Thompson Co.* v. *Whitehed*, 185 Ill. 454 [56 N. E. 1106, 76 Am. St. Rep. 51]). As the statute in reference to voluntary assignments is suspended, the common-law assignment is in nowise affected by that law."

The assignment must be held valid.

The corporation was organized in 1916 by Paul

Goddard, Hochschild and Swenson; its business rapidly increased, and during the World War large profits were made and dividends declared, but at the close of hostilities the profits practically stopped. The first record of salaries voted officers appears in the minutes of a special meeting of the directors attended by Goddard, Hochschild, Swenson, and Strobridge, June 28, 1917, when they voted the following salaries, to commence July, 1917: Paul B. Goddard, president, $15,000; S. R. Swenson, secretary, $6,000; and H. L. Hochschild, treasurer, $6,000. March 11, 1918, the same directors raised the salaries, to date from January 1, 1918, as follows: Goddard, president, $30,000; Swenson, secretary, $25,000; Hochschild, treasurer, $25,000; and Strobridge, vice-president, $15,000. At a meeting of the same directors, April 22, 1919, Goddard, president, stated:

"The meeting was called for the purpose of considering a reduction in salaries of the officers of the company as recommended by the directors at their annual meeting. He pointed out that the business was still being conducted at a loss and that there hardly seemed any possibility of a quick change for the better."

The salaries were then fixed: Goddard, $20,000; Hochschild, $12,000; Swenson, $12,000; Strobridge, $7,000,

"with the understanding that as much of these salaries as was convenient would be left with the company and carried on its books as salaries not paid out until such a time as business might take a turn for the better and commence to show profits."

The subject of salaries was before the same members of the board at a meeting on March 22, 1920, and "it was the opinion of the directors that the year of 1920 would probably be a very disappointing one from a business standpoint," and the salaries of the officers for the year 1920 were fixed as follows:

Goddard, $15,000; Hochschild, $8,000; Swenson, $8,000; Strobridge, $3,120.

February 7, 1921, Hochschild's resignation as an officer and director of the company was accepted and L. S. Rawson was elected a director, "to serve the unexpired term" and Swenson was elected treasurer.

February 8, 1921, "due to poor business" salaries were again changed by directors Goddard, Swenson, Strobridge and Rawson: Goddard, $15,000; Rawson, $5,200; Swenson, $6,000; Strobridge, $2,500. At the annual meeting of the directors March 7, 1921, attended by Goddard, Rawson, Swenson and Strobridge, Goddard was re-elected president, Strobridge vice-president, and Swenson secretary and treasurer, and they fixed their salaries for the year 1921 as follows: Goddard, $15,000; Rawson, $5,200; Swenson, $6,000; Strobridge, $2,500. June 30, 1921, at a meeting of the same directors it was stated by president Goddard that, "inasmuch as business seemed to be getting poorer and poorer it seemed advisable to again reduce the salaries of the officers of the company," and they were fixed at, Goddard, $7,500; Rawson, $3,900; Swenson, $3,900; and Strobridge, $2,500. At a meeting of the board of directors on May 13, 1922, attended by Goddard, Swenson and C. W. Goddard, a quorum of the board, business difficulties were discussed and Paul B. Goddard stated he had been making every possible sacrifice to reduce operating loss, and

"was willing to continue so to do, having full confidence in the business and its ultimate success. For the purpose of assisting along this line, he offered to assign his interest in the Detroit factory property to the company, inasmuch as the reasons recited in the contract of purchase for not burdening the corporation with the liability of such purchase contract do not now exist, thereby enhancing the assets of the corporation."

The directors were confronted with the need of mak-

ing a better business showing or meeting loans made to the corporation.     The directors then resolved:

"That the offer of Paul B. Goddard, to assign and turn over to the company his right, title and interest in and to the Detroit factory property contract of purchase and lease be, and the same is hereby accepted, that the necessary assignments thereof be received and filed.     Further resolved that it shall be optional with the company to return to Mr. Paul B. Goddard his original investment therein, with interest, if and when the company shall be in a position so to do, and the board of directors shall so determine.     For the further purpose of assisting the present situation Mr. Paul B. Goddard offered to give the company a receipt in full for salaries standing on the books to his credit, to the amount of three thousand eight hundred and eighty-three dollars ($3,883), thereby reducing the liabilities of the company to that extent, and he further offered to serve in his present capacity during the balance of the year 1922 for one dollar salary, and to draw no funds whatever, outside of traveling or other expense."     *     *     *

This offer was accepted, but no assignment executed or receipt given.     Mr. Swenson was one of the three directors present at this meeting, but withheld his vote upon the matters above mentioned.     At each meeting of the stockholders the action of the board of directors, inclusive of fixing salaries, was approved, but the officers so receiving salaries held a majority of the stock, and, in fact, approved their own acts as directors.     The action of the directors was void. *Miner* v. *Belle Isle Ice Co.*, 93 Mich. 97 (17 L. R. A. 412).     Being void there could be no ratification by the stockholders.     *Bassett* v. *Fairchild,* 132 Cal. 637 (64 Pac. 1082, 52 L. R. A. 611) ; *Klein* v. *Independent Brewing Ass'n,* 231 Ill. 594, 613 (83 N. E. 434).

As stated in *Davis* v. *Thomas & Davis Co.*, 63 N. J. Eq. 572 (52 Atl. 717) :

"It is entirely settled that where directors of a

232—Mich.—33.

corporation attempt to deal with themselves, their acts are the subject of judicial inquiry and supervision. Directors cannot fix the value of their own services to the corporation. Whenever they attempt to do so, and their action is challenged by a stockholder, or other interested persons, the burden is upon them to show what they have done to merit payment, and the quantity of compensation to which they are entitled is to be graded, not by the sum voted, but by what they earn. *Gardner* v. *Butler,* 3 Stew. Eq. (30 N. J. Eq.) 702, 725; *Fougeray* v. *Cord,* 5 Dick. Ch. (50 N. J. Eq.) 185 (24 Atl. 499)."

Also in *Luthy* v. *Ream,* 270 Ill. 170, 177 (110 N. E. 373, Ann. Cas. 1917B, 368), it was stated:

"Compensation voted to an officer of a corporation is illegal if the resolution fixing such compensation is carried by his vote (*McNulta* v. *Corn Belt Bank,* 164 Ill. 427 [45 N. E. 954, 56 Am. St. Rep. 203]; *Voorhees* v. *Mason,* 245 Ill. 256 [91 N. E. 1056]). The salaries voted to the three officers by their own votes were therefore illegal, and the decree of the circuit court properly required the amounts which had been paid on account of such salaries to be refunded."

While this corporation made large profits during the war, employed 500 men and paid big dividends, its successful operation halted when its contracts, dependent upon a continuation of the war, were canceled. Large profits alone constitute no justification for big salaries, for net profits belong to stockholders. Neither does the fact that officers receiving such salaries are the principal stockholders bear at all upon their legal right thereto. These officers voted the salaries to themselves and then, as controlling stockholders, approved such action. Such action was wholly void, required refund thereof or, at least, casts upon the officers the burden of showing the salaries were reasonable or to give the court information upon which reasonable compensation could be fixed. Defendant officers offered no justification for the salaries

and, in the absence of a showing of what would have been reasonable, the court cannot readjust as on the *quantum meruit,* and can do no less than hold defendants liable for all they received. This brings us to the question of whether right of recovery is in the trustee, or in the corporation, or, in case of failure of the corporate officers to act, in the stockholders. Under the assignment the recovery of the corporate assets so diverted may be had and may reach back, even beyond the date of incurring indebtedness, to any point within which the corporation could exact refund.

The lease of the Detroit property, executed by Goddard, Swenson and Hochschild, to the corporation and on the part of the corporation through the action of these same men, as its corporate directors and officers, was, if not void, at least voidable, and rights of the corporation in and to the property were not fixed or determined by such lease and may now be found regardless thereof, and submission of the corporation while under the domination of the lessors may not be invoked by defendants as a time of sleeping on rights or in bar of relief in this case. The purpose of establishing a branch plant in Detroit, the need of a site, the agency of defendant officers, their fiduciary relations in the premises, the fact they purchased ostensibly for the company but manipulated the whole transaction so that outside of the initial payment of $6,000 the company would pay for the property in five years, and then defendants would own it unless the company paid for it again, the corporate records evidencing the true purpose of the purchase and all surrounding circumstances persuade us that the only interest of defendants therein is the $6,000 they paid, and this was paid for the benefit of the company, and the company should be decreed title subject to performance of the land contract under which the prop-

erty was purchased, with credit of $6,000 to defendants.    The fiduciary relation of directors to a corporation, the rule of common honesty, the measure of fidelity exacted and the mastery of right over sordid motives and betrayals of trust have been so uniformly expounded by the courts that it would be but calling a roll of courts to cite the authorities.

May this trust be declared without offending the statute of uses and trusts?    A trust has resulted by reason of the fraud perpetrated by defendant directors, their want of fidelity of management and disloyalty to their principal, and the statute (3 Comp. Laws 1915, § 11565 *et seq.*) affords them no cover or immunity, neither does the statute prevent the court from declaring the trust and vesting the title where of right and in equity and good conscience it belongs.

The suit by Hochschild in the municipal court of Chicago, resulting in judgment in his favor for unpaid salary, and *now pending on appeal,* constitutes no bar to this suit.    Assuming, but not deciding, that the Illinois court and this court have concurrent jurisdiction with reference to the matter of such salary, the jurisdiction remains concurrent until final judgment is rendered in one of the suits.

As stated in *Becker* v. *Railroad Co.,* 250 Ill. 40 (95 N. E. 42, 35 L. R. A. [N. S.] 1154), quoting from the syllabus:

"The rule that where courts have concurrent jurisdiction the one first acquiring jurisdiction may retain it does not apply where the courts are in different States, and in such case both suits may proceed until judgment is recovered in one suit, when it may then be set up in bar of the other."

There being no final judgment in the Illinois case that suit could not be pleaded in bar of consideration of the question of salaries in this suit, neither does the pendency of that suit interfere at all with determination in this suit.

Defendant Clark intervened and by answer claimed to have purchased the contract interests of the other defendants in the Detroit property, but set up no date of purchase or terms thereof and offered no evidence in support of his claim.

The answers of Paul and Karl Goddard alleged a sale by Paul of his interest in the property to Karl, but gave no date and no evidence relating to such claimed sale was offered. This sale by Paul was asserted by Karl in a letter to plaintiff November 13, 1922, along with the following significant statement:

"You will recall discussing with me some time ago the advisability of having some one file a bill with a view to establishing an undeclared trust in favor of the company on the theory that this purchase was in reality for the benefit of the company. Of course this is a legal question and I am frank to say that I would not want to definitely predict the outcome of such an attempt. Nevertheless, it would seem to me that on the face of the lease and the circumstances surrounding the transaction there appears a number of facts which would strongly support such a position."

Defendant Karl Goddard has no interest in the property. Defendant Clark has no interest in the property and should pay rent for his use and occupation as decreed in the circuit.

The decree in the circuit found Paul B. Goddard liable in the sum of $80,810.24 for salary he received. This is reduced to $77,060.24. With this modification the decree in the circuit is affirmed, with costs to plaintiff.

McDONALD, C. J., and CLARK, SHARPE, MOORE, STEERE, and FELLOWS, JJ., concurred. BIRD, J., did not sit.