THWING *v.* WEIBATCH LIQUID SCALE CO.

1. CORPORATIONS—FRAUD—SALE OF NONPAR VOTING STOCK—INTENT.
   Where the right of stockholders of a corporation to vote was dependent upon the number of shares of nonpar voting stock held by them, and they bought said stock in reliance upon the statement that the nonpar voting stock would be allotted to the purchasers of the common stock, the issue of a majority of the nonpar shares of stock by the board of directors to one of their members at the price of $1 per share, thus giving him control of the corporation without his owning a majority of the common stock, was a fraud upon the other stockholders, whether or not there was any such intent.[1]

2. SAME—WAIVER—ONE STOCKHOLDER COULD NOT WAIVE RIGHTS OF OTHERS.
   In a suit by stockholders of the corporation against the directors, attacking the validity of said sale of nonpar voting stock, it is no defense that one of the plaintiffs, who was at the time of the sale a director, had an opportunity to purchase some of it, since his action or nonaction would not affect the rights of the other plaintiffs.[2]

[1]Corporations, 14 C. J. § 519 (Anno); [2]Id., 14 C. J. § 519 (Anno).
On right of officer, director, or stockholder, in absence of special contract, to compensation for services to corporation, see note in L. R. A. 1917F, 310.

3. SAME—ILLEGAL SALE OF STOCK—QUESTIONS CONSIDERED.

The subsequent actions of the defendants while in control, and whether or not they have voted said stock in the best interests of the company, will not be considered by the court in determining whether the action taken in disposing of said stock was authorized, since they had no right to control unless they owned a majority of the common stock.[3]

4. SAME—DIRECTORS MAY BE ALLOWED REASONABLE COMPENSATION.

Although the action of directors of a corporation in fixing their own salaries is void, the reasonable value of their services, if proven, may be allowed to them, and where it clearly appears that defendants have rendered valuable services, the court will not order the money received by them as salaries returned to the company.[4]

5. SAME—STOCK ILLEGALLY SOLD REQUIRED TO BE RETURNED.

In a suit by stockholders of a corporation complaining of the action of the board of directors in selling, without authority, a majority of the nonpar voting stock to one of their members at $1 per share, the return of said stock to the secretary is required on the repayment of the money paid therefor.[5]

Appeal from Kent; Perkins (Willis B.), J.    Submitted October 16, 1925.    (Docket No. 89.)    Decided December 22, 1925.    Rehearing denied April 6, 1926.

Bill by George S. Thwing and others against the Weibatch Liquid Scale Company and others for the appointment of a receiver and for an accounting. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for an accounting.

*Edgar A. Maher* (*Irving H. Smith,* of counsel), for plaintiffs.

*Dunham, Cholette & Quail,* for defendants.

SHARPE, J.    The plaintiffs are stockholders in the defendant corporation.    The defendant Martineau is president, Townsend secretary and treasurer, and the

---

[3]Corporations, 14 C. J. § 519 (Anno); [4]Id., 14 C. J. § 1908; [5]Id., 14 C. J. § 1898.

other defendants directors of the corporation.    The bill alleges a combination on the part of the individual defendants to misappropriate the funds of the corporation; that certain stock was unlawfully issued by them; that, without authority, they have used the moneys of the corporation in the payment of salaries to themselves, and that they failed to keep proper books of account of the corporate affairs.    An accounting and the appointment of a receiver are asked for.    The plaintiffs appeal from a decree dismissing the bill.

The corporation was organized in 1921, with an authorized capital of $20,000, under the name of the William G. Finch Company, Inc.    Under amended articles, filed in 1922, the name was changed to that of the defendant corporation, and its authorized capital stock increased to $200,000 of common stock (the shares being of the par value of $100), and 1,000 shares of no par value voting stock.    One-half of one share of the latter was allotted to each purchaser of one share of the former.

At a meeting of the board of directors on August 24, 1922, the following proceedings were had:

"Motion made by Mr. Clarke to offer for sale eighty thousand dollars of the capital stock at one and one-half shares of the nonpar value stock to be given with each share of the capital stock, up to 500 shares of the nonpar value stock.    Supported by Mr. Thwing. Carried.

"Motion made by Mr. Wilson that there be no dividends paid on nonpar value voting stock until substantial dividends had been paid on common stock. Supported by Mr. Clarke.    Carried.

"Motion made by Mr. Wilson that the board of directors be authorized to sell the remaining five hundred shares of the nonpar value stock at one dollar per share.    Supported by Mr. Clarke.    Carried.    Mr. Wilson offers to purchase three hundred shares of nonpar value stock at one dollar per share.

"Motion made by Mr. Thwing that Mr. Wilson's offer be accepted.    Supported by Mr. Clarke.    Carried."

At the time this meeting was held, 400 shares of the common stock had been sold and 200 shares of nonpar value voting stock issued to the purchasers thereof. The right of the stockholders to vote was dependent upon the number of shares of nonpar voting stock held by them. The issue to Mr. Wilson of the 300 shares of nonpar stock at $1 per share gave him the absolute control of the affairs of the company, and it is clear that, no matter what the intent of the directors may have been, it operated as a fraud upon those who had purchased stock in reliance upon the statement that the nonpar voting stock should be allotted to the purchasers of the common stock.

Counsel for the defendants defend this action by the claim that the company then needed the money; that it was sold "at the price fixed by the State;" that plaintiff Thwing was then a director, and had an opportunity to purchase a part of it, and that there "is not a single instance where this stock was voted for anything but the best interests of the company." In answer it may be said that the amount received was but $300; neither the articles of association nor permission to sell appear in the record; Thwing's action or nonaction would not affect the rights of the other plaintiffs, and, as the individual defendants were not entitled to control of the company unless they owned a majority of the common stock, their subsequent actions while in control will not be considered in determining whether the action taken in disposing of the nonpar stock was authorized.

At a meeting of the board of directors, held on April 11, 1922, the following action was taken:

"Motion made by Mr. Townsend that all salaries for officers be suspended from this date to conserve the funds that are already here, except such salaries as might already be agreed upon by the board of directors. Motion made and supported. Carried."

It does not appear what salaries had been theretofore fixed or agreed upon. This meeting was held soon after the amended articles were filed. The business office of the company and its plant had at that time been removed from Kalamazoo to Grand Rapids. While the record contains the proceedings of many meetings of the board of directors held after that date, it does not appear that any° action was taken fixing the salaries of any of the officials or employees. The record discloses that Mr. Martineau and Mr. Clarke have been paid compensation for services at the rate of $50 per week from January, 1924, and Mr. Townsend at the same rate from June, 1922. While the record is not very satisfactory in this respect, there is proof that these men were giving substantially all of their time to the business of the corporation and rendering valuable service therefor, and some proof that the service rendered was worth the sums received by them. The plaintiff Thwing, on September 22, 1923, wrote a letter, addressed "To Whom It May Concern," which was used in soliciting purchases of the stock, in which he said:

"Under the management of the men responsible for the welfare of the corporation it will not only be a safe and prudent investment but should be profitable for every stockholder."

In *McKey* v. *Swenson,* 232 Mich. 505, it was held that the action of directors in fixing their own salaries was void, but it was intimated that the reasonable value of the service rendered, if proven, would be allowed to them. While the proof submitted as to the value of the service rendered by the defendants is meager, the plaintiffs had the right to examine both Mr. Martineau and Mr. Townsend, who were called as witnesses, relative thereto. Not having done so, we feel unwilling to order the moneys so received by the defendant returned to the company when it

is so clearly apparent that valuable service was rendered by them.

We see no occasion for the appointment of a receiver for the defendant company. The decree of the lower court will be modified by requiring the defendants who now have possession of the nonpar stock issued pursuant to the resolution of August 24, 1922, to return the same to the secretary of the company for cancellation. On doing so, they will be entitled to a return of the money paid into the treasury therefor. The plaintiffs will have costs of both courts.

McDONALD, C. J., and CLARK, MOORE, STEERE, FELLOWS, and WIEST, JJ., concurred. BIRD, J., did not sit.