## WISEMAN v. MUSGRAVE.

1. CORPORATIONS—CONTRACTS WITH DIRECTORS.
   The burden is upon a director to show the fairness, reasonableness, and good faith of a bargain made by the corporation with himself.

2. SAME—DIRECTORS—CREDITORS—RESOLUTIONS—FINDINGS OF COURT.
   Finding of trial judge in nonjury action of assumpsit that defendants were creditors of corporation of which plaintiff was receiver for services rendered corporation while they were directors and in control thereof and that payment of $75 a month made after such relation had terminated was not a fraud upon other creditors of corporation is not disturbed under record showing a resolution authorizing such payments which had been passed before services were performed or payments made.

3. APPEAL AND ERROR—NONJURY CASE—EVIDENCE.
   In cases tried without a jury the trial judge is best able to judge the credibility of, and the weight to be accorded, testimony of witnesses he saw and heard and the Supreme Court will not reverse unless the evidence clearly preponderates in the opposite direction.

4. COSTS—BRIEFS ON APPEAL.
   No costs are allowed on appeal upon affirmance of judgment where appellees did not file a brief.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 4, 1944. (Docket No. 8, Calendar No. 42,610.) Decided October 11, 1944.

(523)

Assumpsit by Walter G. Wiseman, receiver of Musgrave Tire Sales & Service, Inc., a Michigan corporation, against Robert R. Musgrave and another to recover money paid defendant as salary. Judgment for defendants. Plaintiff appeals. Affirmed.

*John McNeil Burns* (*Hugh V. Williams,* of counsel), for plaintiff.

Bushnell, J. Plaintiff Walter G. Wiseman, receiver of Musgrave Tire Sales & Service, Inc., a Michigan corporation, in voluntary dissolution, brought suit against defendant Robert R. Musgrave, the former president, treasurer, and controlling stockholder of the corporation, and defendant Howard L. Philippart, a stockholder, charging the unlawful withdrawal of corporate funds by Musgrave, with the assistance of Philippart while the corporation was insolvent.

Musgrave became connected with the corporation in 1923 or 1924, and in 1931 acquired all of its shares of stock, except two, one of which was held by his wife, Kathryn A. Musgrave, and the other by the company's attorney, defendant Howard L. Philippart. The company was in the business of selling and servicing automobile truck tires.

Prior to 1933 the corporate by-laws provided that each director should receive $75 per week as compensation. At that time, however, because of past due obligations to Kelly-Springfield Tire Company, the by-laws were amended to provide that no salary or compensation should be paid to any director or officer until the Kelly-Springfield obligation had been paid in full. The minutes show that in 1934 an adjustment had been made with Kelly-Springfield Tire Company and it was unanimously agreed that some of the duties relative to the operation of the

business be allotted to the vice-president, Kathryn A. Musgrave, without remuneration to her until a salary should be determined by the directors and stockholders. In 1935 compensation of $75 per month was authorized for additional services formerly performed by Philippart.

On July 27, 1940, the corporate records show the acceptance of the resignation of Musgrave and the transfer of his stock to G. P. Shelby, who was elected president and treasurer in his place. On the same date an agreement was made between the company and Manufacturers Trading Corporation of Cleveland, Ohio, for the sale to it of accounts receivable and the advancement by it of certain funds. On August 2, 1940, the company paid Musgrave $4,095.96 out of funds totaling $4,580.01, obtained from the Manufacturers Trading Corporation as the proceeds of pledged accounts and a mortgage. On May 17, 1940, the title to an automobile had been transferred to Musgrave. He testified that the automobile belonged to him although its value was charged to him on the company's books, and that the money he received from the company represented accrued unpaid salaries due him and his wife.

Prior to 1935 Musgrave received a salary of $150 a week. During 1935, 1936 and 1937 Mrs. Musgrave was allowed $75 a month for part-time work, consisting of handling collections, locating bad debtors, and securing the names and addresses of possible buyers of truck tires. When she became ill in 1937 and could no longer do this work, it was done by Musgrave after hours, with the understanding that he was to receive this additional compensation. Sometime thereafter Mrs. Musgrave died. The business continued to show a loss for five successive years, with the consequence that Musgrave did not regularly receive this $75 a month. He did receive, however, during this period the sum of $75 a week

for his regular services to the company. The dissolution proceedings were instituted in 1941.

The instant case was heard by the trial judge sitting without a jury, and the receiver has appealed from a judgment in favor of defendants. Appellant raises questions pertaining to the validity of the corporate resolution of 1935, which "purported" to authorize additional compensation of $75 a month, and the liability, if any, which accrued under such resolution; also, whether or not defendant Musgrave and his wife were creditors of the corporation and whether the subsequent payments to Musgrave were in fraud of creditors. The trial judge did not specifically pass upon the validity of the corporate resolution, but did hold that liability had accrued and that Musgrave was a creditor and the payments to him were not a fraud upon other creditors. This conclusion was based entirely upon the factual situation. The minutes of the corporation recite:

"That inasmuch as Howard L. Philippart, the secretary, will not be able to devote as much time as formerly to the company business, and that this will necessitate additional remuneration for such additional services to the corporation, the sum of $75 per month until changed by proper action on the part of the stockholders and directors of the company, and to be paid when possible and when the funds are available, or to accumulate and to be liquidated at the earliest possible time within the discretion of the officers and stockholders of the company."

The receiver argues that the above resolution is void because Musgrave at that time controlled the corporation and owned all but two shares of its corporate stock. Musgrave replies that he actually performed the extra services which were reasonably worth $75 per month to the company, and that the action of the corporation after he had disposed of

his stock and severed connection with it in paying him $4,095.96 was lawful and valid. To support his claim that a majority stockholder cannot legally vote himself an increase in salary as an officer or director of the corporation, plaintiff receiver relies on *Miner* v. *Belle Isle Ice Co.,* 93 Mich. 97, 111 (17 L. R. A. 412). In that case the court said:

"The contracts fixing salaries and rentals must therefore be held not only voidable, but absolutely void."

But this is qualified by what is said in the same paragraph immediately following the above sentence:

"In any case the burden is upon the director to show fairness, reasonableness, and good faith, and upon this record these transactions must not only be held to be constructively fraudulent, but fraudulent in fact."

Plaintiff also relies on *McKey* v. *Swenson,* 232 Mich. 505. In that case the court held that the action of the officers of the corporation in voting certain salaries to themselves and then approving such action as controlling stockholders was wholly void. It is obvious that this conclusion was reached because the officers failed to prove the reasonableness of the salaries. That opinion says (p. 514):

"These officers voted the salaries to themselves and then, as controlling stockholders, approved such action. Such action was wholly void, required refund thereof *or, at least, casts upon the officers the burden of showing the salaries were reasonable or to give the court information upon which reasonable compensation could be fixed.* Defendant officers offered no justification for the salaries."

Plaintiff also cites *Alfred J. Brown Seed Co.* v. *Brown,* 240 Mich. 569. There again the conclusion

hinged upon failure to prove the value of services. The opinion says:

"We are not persuaded that their services were worth the sum fixed by themselves. They should account for the money received as increased salaries. See *McKey* v. *Swenson*, 232 Mich. 505."

The *McKey Case* was again cited by this court in *Nahikian* v. *Mattingly*, 265 Mich. 128, where Mattingly was the general manager of the corporation and became the dominant factor in the company. The court said:

"In *McKey* v. *Swenson*, 232 Mich. 505, we held action in fixing salaries wholly void and cast the burden upon the officers to give the court information upon which reasonable compensation could be fixed. Such, however, is not the case at bar, for here we do not have wholly void action but only assertion of unreasonable compensation and the burden is on plaintiff to establish the charge."

From the foregoing it is apparent that the action of the stockholders of the corporation here involved, even though Musgrave owned practically all of the stock, would be void only in the absence of convincing proof that he actually rendered additional services worth $75 a month. On the record before us the testimony reasonably establishes that Musgrave earned the additional compensation, and that his extra services were worth $75 a month. This distinguishes the case at bar from those relied on by the receiver.

We have examined the testimony and are not disposed to disagree with the trial judge's findings which, in part, were:

"In the last analysis the issue narrows itself down to one of fact—that is, to a determination of whether or not honestly and fairly services worth $75 a month to the corporation were rendered by

claimant, Mr. Musgrave. The fact that this money was paid after he had severed his connection with the company and upon the vote of the successor stockholders and directors might raise a puzzling problem in the effort to hold Mr. Musgrave for official misconduct after he had ceased to be an official. This point becomes unnecessary to determine however. It must be assumed, reasonably, that this is not a trumped-up charge of $75 a month which was conceived on the eve of dissolution and then spread backward over the books to give it an air of legitimacy. It has its genesis in the minutes of the corporation several years before the dissolution and was carried as an item payable month by month over a long period of time.    *    *    *

"It does not take much intelligent work to be worth $2.50 a day, and the court does not hesitate to find that the efforts contributed by Mr. and Mrs. Musgrave to this business were worth that amount of money. This is the controlling finding in the case and makes any other determination of solvency or insolvency or of any other of the issues unnecessary."

Furthermore, as said in *Mallory* v. *Pitcairn,* 307 Mich. 40, 47:

"We have repeatedly said that in cases tried without a jury the trial judge may give such weight to the testimony as in his opinion it is entitled to, and that in such cases we do not reverse unless the evidence clearly preponderates in the opposite direction. *Hazen* v. *Rockefeller,* 303 Mich. 536; *Hanson* v. *Economical Cunningham Drug Stores, Inc.,* 299 Mich. 434."

The judgment is affirmed but without costs, no brief having been filed by the appellees. It is so ordered.

NORTH, C. J., and STARR, WIEST, BUTZEL, SHARPE, BOYLES, and REID, JJ., concurred.