# Syllabus

Chief Justice:
Robert P. Young, Jr.

Justices:
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack
David F. Viviano

This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.

Reporter of Decisions:
Corbin R. Davis

## MADUGULA v TAUB

Docket No. 146289. Argued December 10, 2013 (Calendar No. 5). Decided July 15, 2014.

Rama Madugula brought an action in the Washtenaw Circuit Court against Benjamin A. Taub and Dataspace, Incorporated (the company Taub had founded), under the Business Corporation Act, MCL 450.1101 *et seq*. In 2002, Taub hired Madugula as a vice president and also hired Andrew Flower. Taub was Dataspace's sole shareholder until 2004, when Madugula and Flower became part owners. The three shareholders entered into a stockholders' agreement under which Taub became president, secretary, and treasurer and Madugula and Flower became vice presidents. The agreement included a supermajority provision requiring approval by the holders of 70 percent of the corporate stock for, among other things, material changes in the nature of the business, compensation for the shareholders, or methods of determining compensation for the shareholders. Madugula continued to work for Dataspace, but Flower exercised his right under a buy-sell agreement to withdraw from Dataspace. Taub and Madugula purchased Flower's shares, giving Madugula about 36% of the shares. Taub changed Dataspace's focus to marketing a new product, which Madugula claimed was a major departure and a material change. Taub subsequently terminated Madugula's employment, though Madugula maintained his board position and interest in the company and continued to receive dividends from the company as a shareholder. Madugula's complaint asserted counts of shareholder oppression under MCL 450.1489 (§ 489), breach of the duty of good faith under MCL 450.1541a, and common-law fraud and misrepresentation. Madugula sought damages, the removal of Taub as a director, the appointment of a receiver to protect the value of his stock, an accounting of Dataspace, and all other relief to which he was entitled in equity or law. The court, Archie C. Brown, J., granted Taub and Dataspace summary disposition in part, dismissing all counts against them except Madugula's claim of shareholder oppression under § 489 against Taub. Taub then filed a motion in limine arguing, among other things, that Madugula did not have a right to a jury trial for his § 489 claim. The court denied the motion and further determined that Madugula could present evidence regarding breaches of the stockholders' agreement to establish his claim of oppression. The jury determined that Taub had engaged in willfully unfair and oppressive conduct that substantially interfered with Madugula's interests as a shareholder and awarded Madugula economic damages. It further concluded that Taub was required to buy Madugula's stock. The court entered a judgment in Madugula's favor. Taub moved for judgment notwithstanding the verdict or, in the alternative, for a new trial or for remittitur, arguing that the case should have never gone before a jury because a § 489 claim is equitable in nature. The court denied Taub's motions, and he appealed. The Court of Appeals,

RIORDAN, J. (BORRELLO, J., concurring and RONAYNE KRAUSE, P.J., concurring in part and dissenting in part), affirmed in an unpublished opinion, issued October 25, 2012 (Docket No. 298425), concluding that Taub's behavior was willfully unfair and oppressive, that there was further evidence of oppression because Taub had violated the supermajority provision in the stockholders' agreement, and that the termination of Madugula's services was evidence of oppression. The Court of Appeals further determined that the trial court had not abused its discretion by denying Taub's motion for a new trial based on the argument that he was entitled to a bench trial. Taub sought leave to appeal in the Supreme Court, which granted his application. 494 Mich 862 (2013).

In a unanimous opinion by Justice VIVIANO, the Supreme Court *held*:

There is no statutory or constitutional right to a jury trial for shareholder-oppression claims brought under MCL 450.1489, which must instead be heard by a court of equity.

1. Section 489 provides that a shareholder may bring an action in circuit court to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder. If the shareholder establishes grounds for relief, the circuit court may grant the relief it considers appropriate, without limitation. Section 489 further provides the court with a nonexhaustive list of remedies available to it in its discretion.

2. A right to a jury trial can exist either statutorily or constitutionally. Whether § 489 claims must be decided by a court of equity depends on whether a § 489 claimant has a right to a jury trial. While § 489 contains no express language granting the right to a jury trial, that fact was not by itself dispositive. Rather, it was necessary to examine the statutory language as a whole to determine the Legislature's intent. Damages are a legal rather than equitable remedy, and legal issues are traditionally tried before a jury. Accordingly, the question was whether the reference to an award of damages in § 489 indicated that the Legislature intended to provide a claimant seeking damages the right to a jury trial. Considering the remedy of damages authorized in § 489(1)(f) as part of the statute as a whole, however, did not lead to the conclusion that there was a statutory right to a jury trial for claims seeking damages. The statute's use of the word "may," use of the phrase "as it considers appropriate," and lack of limitations on the court with respect to determining the appropriate relief available indicated wide discretion for the court when deciding what relief, if any, should be awarded after shareholder oppression is established. Wide latitude to fashion relief is consistent with an action in equity. Moreover, while damages are generally considered legal relief awarded by a jury, a court of equity is likewise capable of awarding that relief. Accordingly, § 489 does not provide the right to a jury trial.

3. Const 1963, art 1, § 14 preserved the right to trial by jury in all cases in which the right existed before adoption of the 1963 Constitution, but also guaranteed that right for cases arising under statutes enacted after the adoption of the Constitution that are similar in character to cases in which the right existed before it was adopted. To determine whether there is a constitutional right to a jury trial for a claim under § 489, which was enacted after the Constitution, it was necessary to consider whether a § 489 claim is similar in character to a claim affording a right to a jury trial when the Constitution was adopted, focusing on the nature of the

claim and the relief sought by the claimant. If the claim would have been considered legal in nature when the Constitution was adopted, the right to a jury trial would be preserved, but if it would have been considered equitable, then a court of equity must hear the claim.

4. A § 489 claim has similarities to two types of claims that existed before the adoption of the Constitution: shareholder derivative claims against the directors or those in control of the corporation and claims for corporate dissolution. Both types of claims would have been considered equitable in nature at the time the 1963 Constitution was adopted. Madugula sought a forced buyout of his stock and money damages under § 489(1)(e) and (f). Despite his request for specific relief, however, the trial court was free under the statute to grant relief as it considered appropriate, or none at all, even if Madugula were to establish shareholder oppression. The fact that the relief sought did not bind the trial court was consistent with an equity claim. Furthermore, a claim under which the trial court has broad power to fashion relief as the circumstances require is consistent with an action in equity. Accordingly, a claim like one under § 489 would have been considered equitable in nature at the time the 1963 Constitution was adopted. Moreover, a court sitting in equity may award damages when necessary, so the availability of money damages did not change the overall equitable nature of a § 489 claim. No constitutional right to a jury trial exists for a claim under § 489, which must be tried before a court of equity in its entirety.

5. The trial court abused its discretion by not granting Taub's motion for new trial and by allowing a jury trial on Madugula's § 489 claim. It was necessary to remand the case to the trial court, however, to determine whether it could, on the present record, make the necessary findings of fact and conclusions of law as a court of equity or whether a new trial was necessary.

6. Evidence of a breach of a shareholder agreement may be used to establish shareholder oppression under § 489. The relationship between a corporation and its stockholders is contractual in its nature. To determine a shareholder's interests, a court may examine the articles of incorporation, the bylaws, and the governing statutes. Although the Business Corporation Act provides specific rights and interests to a shareholder as a shareholder, shareholders are entitled to modify those rights and interests through voting agreements under MCL 450.1461 and shareholder agreements under MCL 450.1488. The shareholders in this case entered into an effective stockholders' agreement that modified their statutory rights and interests as shareholders. The Court of Appeals correctly determined that a breach of the rights and interests in the stockholders' agreement could be evidence of shareholder oppression, but the trial court must determine on remand whether and to what extent any breach of the agreement demonstrated oppression in this case.

Court of Appeals' judgment reversed, trial court's judgment in favor of Madugula reversed, and case remanded to the trial court.

©2014 State of Michigan

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.   Michael F. Cavanagh
                        Stephen J. Markman
                        Mary Beth Kelly
                        Brian K. Zahra
                        Bridget M. McCormack
                        David F. Viviano

FILED July 15, 2014

STATE OF MICHIGAN

SUPREME COURT

RAMA MADUGULA,

      Plaintiff/Counterdefendant-
      Appellee,

v                                                    No. 146289

BENJAMIN A. TAUB,

      Defendant/Counterplaintiff-
      Appellant,

and

DATASPACE, INCORPORATED, and
ANDREW FLOWER,

      Defendants,

_____

BEFORE THE ENTIRE BENCH

VIVIANO, J.

    In this case, we address whether Michigan's shareholder-oppression statute,

MCL 450.1489 (§ 489) of the Business Corporation Act (BCA), MCL 450.1101 *et seq.*,

provides a right to a jury trial or whether claims under § 489 are instead required to be heard by a court of equity. We hold that the plain language of § 489 does not afford a claimant a right to a jury trial and, instead, expresses a legislative intent to have shareholder-oppression claims heard by a court of equity. We further hold that there is no constitutional right to a jury trial for claims brought under § 489. Finally, we hold that violations of a shareholder agreement may constitute evidence of shareholder oppression pursuant to § 489(3). Because the trial court erred by submitting plaintiff's § 489 claim to the jury and allowing it to award an equitable remedy, the Court of Appeals erred by affirming the trial court's judgment in favor of plaintiff. Therefore, we reverse the judgment of the Court of Appeals, reverse the judgment of the trial court in favor of plaintiff, and remand the case to the trial court to determine whether, on the present record, sitting as a court of equity, it can make the requisite findings of fact and conclusions of law under MCR 2.517(A) or whether a new trial is necessary.

## I. FACTS AND PROCEDURAL HISTORY

Defendant Benjamin A. Taub founded Dataspace, Incorporated, in 1994. Dataspace is a technology consulting firm that focuses on constructing business intelligence and data warehouse systems. In 2002, Taub hired plaintiff, Rama Madugula, as vice president of sales and business development for Dataspace. Around this time, Dataspace also hired an individual named Andrew Flower.[1] Taub was Dataspace's sole shareholder until 2004, when Madugula and Flower became part owners, with Madugula

---

[1] Dataspace and Flower are not parties to this appeal.

2

purchasing 29% of the outstanding shares and Flower purchasing 20%. The three shareholders entered into a stockholders' agreement on January 1, 2004.[2] Pursuant to the agreement, Taub became president, secretary, and treasurer of Dataspace, while Madugula and Flower became vice presidents. The stockholders' agreement established a five-member board of directors and allowed Taub to elect three directors and Madugula and Flower to each elect one director.[3] The agreement also contained a supermajority provision, requiring approval by the holders of 70% of the outstanding corporate stock for material changes in the nature of the business, compensation for the shareholders, or methods of determining compensation for the shareholders.[4]

After becoming a shareholder, Madugula continued to work for Dataspace, drawing a salary of about $150,000 a year. In 2007, Flower exercised his right under the buy-sell agreement and voluntarily withdrew from Dataspace. Taub and Madugula purchased Flower's shares, increasing Madugula's interest to about 36% of the shares. Around this time, with Dataspace allegedly struggling, Taub switched the focus of Dataspace to marketing a new product that it developed called JPAS, a software platform for jails. Madugula claims that the JPAS software was a major departure and a material

---

[2] The shareholders also entered into a buy-sell agreement, which sets forth the procedures to be followed upon the death or permanent disability of a shareholder or the voluntary withdrawal by a shareholder.

[3] Madugula elected himself as a member of the board of directors.

[4] A supermajority was also necessary for the adoption of certain benefit or stock plans, a sale of assets other than in the ordinary course of business, the establishment of annual capital expense budgets or actual capital expenses exceeding $100,000 a year, and any other corporate action that would have a material adverse impact on the shareholders.

change from Dataspace's prior software focus. Taub claims that it was simply an attempt to market the firm's existing jail consulting products to other counties. At the time, Madugula did not object to the new focus.

Thereafter, in August 2007, Taub terminated Madugula's employment with Dataspace. Because of his termination, Madugula no longer received a salary from Dataspace, but he maintained his board position and his interest in the company. As a shareholder, he continued to receive dividends from the company.

Madugula sued Taub and Dataspace, asserting the following six counts in the complaint: (1) shareholder oppression under § 489, (2) breach of the duty of good faith under MCL 450.1541a, (3) common-law fraud and misrepresentation, (4) exemplary damages, (5) an appointment of a receiver, and (6) an accounting of Dataspace. Madugula sought damages, the removal of Taub as a director of Dataspace, the appointment of a receiver to protect the value of his stock in Dataspace, an accounting of Dataspace, and all other relief that he was entitled to in equity or law. The circuit court granted summary disposition in favor of Taub and Dataspace, dismissing all counts against them except Madugula's claim of shareholder oppression under § 489 against Taub.[5]

In February 2010, Taub filed a motion in limine arguing, among other things, that Madugula did not have a right to a jury trial for his § 489 claim. In support of the

---

[5] The court also granted Taub's motion for summary disposition as cross-plaintiff against Madugula on a claim that Madugula owed Taub money from a loan for the initial stock purchase. The court determined that Madugula owed Taub $107,892.34, but it denied Taub's request for the immediate release of those funds.

4

motion, Taub relied on the language of § 489 and an unpublished Court of Appeals opinion, *Forsberg v Forsberg Flowers, Inc*.[6] After a hearing, the circuit court rejected Taub's reliance on *Forsberg* and denied his motion to have the § 489 claim heard in equity. The court also determined that Madugula could present evidence regarding breaches of the stockholders' agreement to establish his claim of oppression.

At trial, Madugula argued that Taub had terminated his employment with Dataspace and changed the material nature of the company without obtaining the required 70 percent supermajority vote. Taub argued that his actions were in the best interests of the company and that Madugula could not establish any oppressive conduct by Taub. The jury determined that Taub had engaged in willfully unfair and oppressive conduct that substantially interfered with Madugula's interests as a shareholder. The jury awarded economic damages of $191,675 in favor of Madugula, and it further concluded that Taub had to buy Madugula's stock in Dataspace for $1.2 million.[7] The court entered

---

[6] *Forsberg v Forsberg Flowers, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 5, 2006 (Docket No. 263762).

[7] Although neither party raised the issue, there is a discrepancy in the jury's verdict with regard to the stock buyout. The verdict form required the jury to first answer whether there was willfully unfair and oppressive conduct by Taub against Madugula (Question No. 1) and then whether that conduct substantially interfered with Madugula's interest as a shareholder (Question No. 2). The jury answered yes to both questions. Because it answered yes to both, it was then required to answer Question No. 3: "Is Plaintiff Rama Madugula entitled to economic damages?" The jury answered yes and then awarded him damages totaling $191,675 (Question No. 4). At this point, the jury should have stopped because Question No. 5 read, "If your answer to Question No. 3 was 'NO', is Mr. Madugula entitled to have his stock purchased by Defendant Benjamin Taub?" Notwithstanding the fact that the jury answered yes to Question No. 3, the jury continued on to award Madugula $1.2 million for the fair-value buyout of his stock (Question No. 6). Thus, by the terms of the verdict form, having already awarded economic damages under Question No. 3 and No. 4, the jury should not have considered Question No. 5 or

5

a judgment in Madugula's favor for these amounts, plus interest. Thereafter, Taub moved for judgment notwithstanding the verdict or, in the alternative, for a new trial or remittitur. In this motion, he argued that the case should have never gone before a jury because a § 489 claim is equitable in nature. The court denied Taub's motions, again determining that it was not bound by *Forsberg*.

Taub appealed to the Court of Appeals. In an unpublished opinion, the Court of Appeals affirmed.[8] First, the Court of Appeals considered whether Madugula had established shareholder oppression. After reviewing § 489, the lead opinion concluded that Taub's behavior was willfully unfair and oppressive because Madugula did not have an opportunity to vote on material changes to Dataspace or examine the corporate books.[9] It also determined that there was further evidence of oppression because Taub had violated the supermajority provision in the stockholders' agreement.[10] Noting that termination of employment might give rise to oppression under § 489(3), the lead opinion concluded that the termination of Madugula's services was evidence of oppression. It reasoned that Madugula's "termination disproportionately affected Madugula's interest as a shareholder because Madugula's compensation was reduced to zero and he was no

---

No. 6. There was no discussion on the record of this discrepancy. The court and counsel simply accepted the verdict, and the court entered a judgment reflecting both amounts set forth on the verdict form.

[8] *Madugula v Taub*, unpublished opinion of the Court of Appeals, issued October 25, 2012 (Docket No. 298425).

[9] *Id*. at 3-4 (opinion by RIORDAN, J.).

[10] *Id*. at 4.

6

longer involved in decisions on material issues such as the development of JPAS."[11] Finally, the lead opinion determined that the trial court had not abused its discretion by denying Taub's motion for a new trial based on his argument that he was entitled to a bench trial. It reasoned that Taub had failed "to cite any binding precedent suggesting that the trial court's decision on this issue or its failure to follow an unpublished opinion constitutes an abuse of discretion."[12] Judge BORRELLO concurred. He agreed that the trial court did not abuse its discretion by trying the matter before a jury, but he would have adopted the reasoning of the partial concurrence/dissent in *Forsberg*.[13] Judge RONAYNE KRAUSE concurred in part and dissented in part. She concurred with the lead opinion's analysis of minority shareholder oppression and affirmance of the damages award. However, she would have remanded for a new trial on the equitable remedies, including the forced share buyout, because she believed that the equitable remedies should be determined by a bench trial.[14]

Taub then sought leave to appeal in this Court. We granted Taub's application and asked the parties to address:

(1) whether claims brought under MCL 450.1489 are equitable claims to be decided by a court of equity; (2) whether the provisions of a stockholders' agreement can create shareholder interests protected by MCL 450.1489; and (3) whether the plaintiff's interests as a shareholder were interfered

---

[11] *Id*. at 4-5.

[12] *Id*. at 5.

[13] *Id*. at 1-2 (opinion by BORRELLO, J.).

[14] *Id*. at 1 (opinion by RONAYNE KRAUSE, P.J.).

with disproportionately by the actions of the defendant-appellant, where the plaintiff retained his corporate shares and his corporate directorship.[15]

## II.  STANDARD OF REVIEW

This case involves questions of constitutional law, statutory interpretation, and contract interpretation, all of which are legal questions that we review de novo.[16]

## III.  ANALYSIS

### A.  RIGHT TO A JURY TRIAL FOR CLAIMS UNDER MCL 450.1489

Whether § 489 claims are to be decided by a court of equity depends on whether a § 489 claimant has a right to a jury trial.  A right to a jury trial can exist either statutorily or constitutionally.[17]  We must first review the plain language of the statute to determine whether the Legislature intended to provide a statutory right to a jury trial.[18]  If not, we must next consider whether a § 489 claimant nonetheless has a constitutional right to a jury trial.[19]

---

[15] *Madugula v Taub*, 494 Mich 862 (2013).

[16] *Sweebe v Sweebe*, 474 Mich 151, 154; 712 NW2d 708 (2006); *Debano-Griffin v Lake Co*, 493 Mich 167, 175; 828 NW2d 634 (2013).

[17] See *Conservation Dep't v Brown*, 335 Mich 343, 346; 55 NW2d 859 (1952).

[18] We examine the statute first because, depending on our resolution of the statutory issue, we may not need to reach the constitutional question.  See *Lisee v Secretary*, 388 Mich 32, 40; 199 NW2d 188 (1972) ("[I]t is well settled in Michigan that '[c]onstitutional questions will not be passed upon when other decisive questions are raised by the record which dispose of the case.' ") (citation omitted) (second alteration in original).

[19] See *Brown*, 335 Mich at 346.

## 1. STATUTORY ANALYSIS

We first turn to the question of whether the Legislature intended to provide a statutory right to a jury trial in § 489. As with any statutory interpretation, our goal " 'is to give effect to the Legislature's intent, focusing first on the statute's plain language.' "[20] In so doing, we examine the statute as a whole, reading individual words and phrases in the context of the entire legislative scheme.[21] When a statute's language is unambiguous, "the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written. No further judicial construction is required or permitted."[22]

Section 489, commonly known as the shareholder-oppression statute, allows for actions by minority shareholders in closely held corporations against directors or those in control of the corporation for acts that are illegal, fraudulent, or willfully unfair and oppressive to the corporation or the shareholder. Section 489 reads as follows:

> (1) A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder. If the shareholder establishes grounds for relief, the circuit court may make an order or grant relief as it considers appropriate, including, without limitation, an order providing for any of the following:
>
> (a) The dissolution and liquidation of the assets and business of the corporation.

---

[20] *Malpass v Dep't of Treasury*, 494 Mich 237, 247-248; 833 NW2d 272 (2013) (citation omitted).

[21] *Id*. In addition, according to MCL 450.1103(c), the BCA must be liberally construed and applied "[t]o give special recognition to the legitimate needs of close corporations."

[22] *Malpass*, 494 Mich at 249 (citation and quotation marks omitted).

(b) The cancellation or alteration of a provision contained in the articles of incorporation, an amendment of the articles of incorporation, or the bylaws of the corporation.

(c) The cancellation, alteration, or injunction against a resolution or other act of the corporation.

(d) The direction or prohibition of an act of the corporation or of shareholders, directors, officers, or other persons party to the action.

(e) The purchase at fair value of the shares of a shareholder, either by the corporation or by the officers, directors, or other shareholders responsible for the wrongful acts.

(f) An award of damages to the corporation or a shareholder. An action seeking an award of damages must be commenced within 3 years after the cause of action under this section has accrued, or within 2 years after the shareholder discovers or reasonably should have discovered the cause of action under this section, whichever occurs first.

* * *

(3) As used in this section, "willfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure.[23]

Section 489 contains no express language granting the right to a jury trial and makes no mention of juries, which is a relevant consideration regarding the issue at hand. However, the Legislature's failure to explicitly refer to a "jury" is not, in itself,

---

[23] MCL 450.1489.

10

dispositive. Rather, the statutory language must be examined as a whole to determine the Legislature's intent.[24]

Madugula argues that the Legislature intended to provide a statutory right to a jury trial for a claim under § 489, citing *Anzaldua v Band*.[25] At issue in *Anzaldua* was whether there was a right to a jury trial in an action under the Whistleblowers' Protection Act (WPA), MCL 15.361 *et seq*. Like § 489, the WPA is silent about juries or any right thereto. The WPA provides in part, "A person who alleges a violation of this act may bring a civil action for appropriate injunctive relief, or actual damages, or both . . . ."[26] The WPA further provides:

> A court, in rendering a judgment in an action brought pursuant to this act, shall order, as the court considers appropriate, reinstatement of the employee, the payment of back wages, full reinstatement of fringe benefits and seniority rights, actual damages, or any combination of these remedies. A court may also award the complainant all or a portion of the costs of litigation, including reasonable attorney fees and witness fees, if the court determines that the award is appropriate.[27]

Focusing on whether a WPA claimant had a statutory right to a jury trial for a claim of actual damages, the *Anzaldua* Court first noted that the WPA's mere reference to a "court" rather than a "jury" was not controlling because it was necessary to examine what the WPA "provided that the 'court' should do" with respect to that relief.[28] In

---

[24] *Malpass*, 494 Mich at 248.

[25] *Anzaldua v Band*, 457 Mich 530; 578 NW2d 306 (1998).

[26] MCL 15.363(1).

[27] MCL 15.364.

[28] *Anzaldua*, 457 Mich at 536.

11

undertaking this inquiry, the *Anzaldua* Court noted that the WPA expressly couched the court's authority to order relief in the "procedural step" of "rendering a judgment," which is done on the basis of "previously decided issues of fact."[29]  It explained that, while the language "rendering a judgment" did not foreclose the court from determining an award of damages, it plainly contemplated that a jury, upon proper demand, could do the same.[30]  The *Anzaldua* Court then recognized that damages are "a legal, rather than an equitable, remedy, and legal issues are traditionally tried to a jury."[31]  Therefore, when the Legislature expressly provides for that relief, it may intend that relief to carry with it a right to a jury trial as well.[32]  Viewing the statutory language as a whole, the Court held that the Legislature's inclusion of an actual damages remedy in the statute was an indication that the Legislature intended not only to provide a damages remedy under that statute, but to attach a jury right to it as well.[33]  The *Anzaldua* Court found further support for this conclusion in the history of the WPA and its language—namely, the fact that the Legislature imported the WPA's language directly from the Civil Rights Act, which had been recognized as providing a right to a jury trial.[34]  However, the statutory right to a

---

[29] *Id*.

[30] *Id*. at 537-539.

[31] *Id*. at 541.

[32] *Id*. at 542-543.

[33] *Id*. at 543.

[34] *Id*. at 543-548.  The *Anzaldua* Court specifically held "that, by including [the term 'actual damages'], the Legislature intended that the act contain a right to a jury trial."  *Id*. at 543.  Similarly, at the conclusion of its analysis, the Court stated:

12

jury trial discussed in *Anzaldua* did not extend to claims for equitable relief under the WPA because, unlike the legal remedy of damages, a claimant seeking equitable relief has no traditional right to a jury trial on those issues.[35]

At issue in this case is whether the Legislature's inclusion of the phrase "[a]n award of damages" indicates that it intended to provide a § 489 claimant seeking damages the right to a jury trial when the language of § 489 is read as a whole. We agree with *Anzaldua* that "actual damages" is a term of art and is generally considered a legal remedy that is traditionally tried by a jury.[36] Thus, we recognize that the inclusion of a

---

> Where (1) an action by its nature is not jury barred, (2) the claim is for money damages, (3) the Legislature provided for it to be brought in circuit court, and (4) the Legislature did not deny the right to a jury, the plaintiff properly may demand a trial by jury. [*Id*. at 549-550.]

Despite this language, we do not read *Anzaldua* as standing for the proposition that the inclusion of a damages remedy in a statute automatically attaches a right to a jury trial. Rather, we read *Anzaldua* as meaning that the inclusion of a damages remedy is an indicator that the Legislature may have intended to provide a statutory right to a jury trial, but it is not *a dispositive factor*. As always, and as done both here and in *Anzaldua*, the statute must be read as a whole to determine the intent of the Legislature. *Malpass*, 494 Mich at 248. The four-pronged test set forth in *Anzaldua*, while perhaps a useful distillation of the Court's rationale in that case, should not be read as supplanting or excusing a court's fundamental interpretive obligations, nor does its satisfaction foreclose a court from concluding, on the basis of proper review of the statute as a whole, that the Legislature did not intend to attach a jury right to a claim of damages.

[35] *Anzaldua*, 457 Mich at 538, 541.

[36] See *id*. at 541. While the availability of damages does not automatically afford a right to a jury trial in Michigan, as discussed below, an action for damages has long been considered to be an action at law to which a right to a jury trial attaches. See, e.g., *McFadden v Detroit Bar Ass'n*, 4 Mich App 554, 558; 145 NW2d 285 (1966) (concluding that the plaintiff had an adequate remedy at law—an action for damages— and a right to a jury trial for that action); *Mich Bean Co v Burrell Engineering & Constr Co*, 306 Mich 420, 424; 11 NW2d 12 (1943) (recognizing that the plaintiff's action for damages was a law action that "must be brought on the law side of the court where the

13

damages remedy in a statute, given the peculiar meaning it has acquired in our law, may be an indication that the Legislature intended to provide a right to a jury trial.[37] However, when we consider the damages remedy under § 489(1)(f) as part of the statute as a whole,[38] we cannot conclude that the Legislature intended to attach a statutory right to a jury trial to a claim for damages.

Under § 489, once a shareholder establishes "grounds for relief"—i.e., that oppression occurred—"the circuit court may make an order or grant relief as it considers appropriate," including an award of money damages.[39] In contrast to the WPA's focus on "rendering a judgment," this language emphasizes the court's affirmative authority to award relief and does not inherently contemplate another fact-finder whose determinations the court may be effectuating. Indeed, through the use of the word

---

[37] See *Grange Ins Co of Mich v Lawrence*, 494 Mich 475, 493; 835 NW2d 363 (2013) ("[W]here the Legislature uses a technical word that has acquired a particular meaning in the law, and absent any contrary legislative indication, we construe it 'according to such peculiar and appropriate meaning.' "), quoting MCL 8.3a.

We focus on the statutory reference to an award of damages within § 489(1)(f) because the remedies listed within § 489(1)(a) through (e) are equitable, rather than legal, in nature and thus are not traditionally tried to a jury. See Part III(A)(2)(c) of this opinion; see also *Anzaldua*, 457 Mich at 541.

[38] See *Sun Valley Foods Co v Ward*, 460 Mich 230, 237; 596 NW2d 119 (1999) (recognizing that statutes must be read as a whole and that we must "consider both the plain meaning of the critical word or phrase as well as its placement and purpose in the statutory scheme") (citation and quotation marks omitted).

[39] MCL 450.1489(1).

14

"may," the phrase "as it considers appropriate," and, significantly, the statement that the court is "without limitation" with respect to determining the appropriate relief available,[40] the Legislature provided the circuit court wide discretion in deciding what relief, if any, should be awarded after shareholder oppression is established. As discussed at length below, such wide latitude to fashion relief is consistent with an action in equity.[41] So too is the presence of damages within the nonexhaustive list of remedies enumerated in § 489, for while damages are generally considered legal relief awarded by a jury, a court of equity is likewise capable of awarding that relief.[42]

In addition, while the *Anzaldua* Court concluded that the history of the WPA and its language supported the conclusion that the Legislature intended to provide a statutory right to a jury trial under the WPA,[43] a review of the history of § 489 compels a different result. Section 489 is nearly identical in form to its predecessor, former MCL 450.1825 (§ 825),[44] which was considered equitable in nature and was correspondingly tried to a court.[45] Like § 489, § 825 enumerated a nonexhaustive list of various forms of equitable

---

[40] MCL 450.1489(1) (providing that the court's discretion in determining the appropriate relief is "without limitation").

[41] See Part III(A)(2)(c) of this opinion.

[42] See *id*.

[43] See *Anzaldua*, 457 Mich at 543-548.

[44] Repealed by 1989 PA 121.

[45] See, e.g., *Barnett v Int'l Tennis Corp*, 80 Mich App 396, 403; 263 NW2d 908 (1978); *Moore v Carney*, 84 Mich App 399, 405; 269 NW2d 614 (1978); *Salvador v Connor*, 87 Mich App 664, 673-674; 276 NW2d 458 (1978).

relief that a court could award. Section 825, however, made no mention of damages. When, in 1989, the Legislature replaced § 825 with § 489, damages were added to the nonexhaustive list of relief specified in the statute. The Legislature, however, left intact the statutory language describing the court's authority to grant relief and provided no textual indication that, by choosing to clarify damages as being included among that relief, it intended to introduce a right to a jury into the statute as well. These circumstances fall well outside those present in *Anzaldua* and suggest the opposite result. Thus, unlike *Anzaldua*, a historical analysis of § 489 does not lead us to conclude that the Legislature intended to provide a right to a jury trial under the statute.

Accordingly, we cannot conclude that the Legislature intended to provide a jury right for claims of shareholder oppression under § 489. The only indication comes from the mention in § 489(1)(f) of a damages remedy; proper scrutiny, however, does not bear out that suggestion and instead signals an intent to leave all claims of relief under § 489 with a court and not a jury.

## 2. CONSTITUTIONAL ANALYSIS

### a. BACKGROUND

Having determined that the Legislature did not intend to create a right to a jury trial, we must next determine whether a constitutional right to a jury trial exists for claims under § 489.

Michigan's Constitution provides, in pertinent part: "The right of trial by jury shall remain, but shall be waived in all civil cases unless demanded by one of the parties in the manner prescribed by law."[46] The intention of this provision is

> to preserve to parties the right to have their controversies tried by jury, in all cases where the right then existed . . . and suitors can not constitutionally be deprived of this right except where, in civil cases, they voluntarily waive it by failing to demand it in some mode which the legislature shall prescribe.[47]

Not only is the right to a jury trial "preserved in all cases where it existed prior to adoption of the Constitution," the constitutional guarantee also applies "to cases arising under statutes enacted subsequent to adoption of the Constitution which are similar in character to cases in which the right to jury trial existed before the Constitution was adopted."[48] However, we have also recognized in certain cases the right to trial by court. This Court has stated, " '[T]he distinctions between law and equity must continue to be recognized for the purpose of preserving constitutional rights to trial by jury in legal matters and *trial by court in equity matters*.' "[49] Long ago, we recognized that "[t]he right to have equity controversies dealt with by equitable methods is as sacred as the right

---

[46] Const 1963, art 1, § 14. See also MCR 2.508(A) ("The right of trial by jury as declared by the constitution must be preserved to the parties inviolate."). Prior versions of the Michigan Constitution contained similar provisions. See Const 1908, art 2, § 13; Const 1850, art 6, § 27; Const 1835, art 1, § 9. These provisions were derived from the Northwest Ordinance of 1787, art II.

[47] *Tabor v Cook*, 15 Mich 322, 325 (1867).

[48] *Brown*, 335 Mich at 346.

[49] *Abner A Wolf, Inc v Walch*, 385 Mich 253, 261; 188 NW2d 544 (1971) (emphasis added) (citation omitted).

17

of trial by jury."[50] That is, "[t]he cognizance of equitable questions belongs to the judiciary as a part of the judicial power, and under our Constitution must remain vested where it always has been vested heretofore."[51]

To determine whether a constitutional right to a jury trial attaches to a claim brought under § 489, which was enacted after the 1963 Constitution, we must consider whether a § 489 claim is similar in character to a claim that afforded the right to a jury trial at the time the 1963 Constitution was adopted.[52] We focus on "the nature of the controversy between the parties . . . ."[53] If the nature of the controversy would have been considered legal at the time the 1963 Constitution was adopted, the right to a jury trial is preserved.[54] However, if the nature of the controversy would have been considered equitable, then it must be heard before a court of equity.[55]

---

[50] *Brown v Buck*, 75 Mich 274, 284; 42 NW 827 (1889).

[51] *Id*. at 285. We recognize that our Constitution requires us to abolish, as far as practicable, the distinctions between law and equity proceedings. Const 1963, art 6, § 5. However, the provision does not abolish the historical differences between law and equity, nor can the distinction between law and equity be abolished so far as to remove the constitutional right to a jury trial. See *Holland Sch Dist v Holland Ed Ass'n*, 380 Mich 314, 319; 157 NW2d 206 (1968); *Abner A Wolf*, 385 Mich at 261.

[52] *Brown*, 335 Mich at 346.

[53] *Risser v Hoyt*, 53 Mich 185, 201; 18 NW 611 (1884).

[54] *Abner A Wolf*, 385 Mich at 261.

[55] *Id*. For further discussion, see then Judge MARKMAN's analysis of this issue in the Court of Appeals' opinion in *Anzaldua v Band*, 216 Mich App 561; 550 NW2d 544 (1996), aff'd on other grounds 457 Mich 530 (1998). In particular, see his explanation of why the nature-of-the-action approach provides the proper framework for determining whether the constitutional right to a jury trial attaches to a statute enacted after the adoption of the 1963 Constitution.

18

In making this determination, we consider not only the nature of the underlying claim, but also the relief that the claimant seeks. Indeed, equity will not take "jurisdiction of cases where a suitor has a full, complete, and adequate remedy at law, unless it is shown that there is some feature of the case peculiarly within the province of a court of equity."[56] Accordingly, we must consider the relief sought as part of the nature of the claim to determine whether the claim would have been denominated equitable or legal at the time the 1963 Constitution was adopted.

In sum, our inquiry in this case is whether a claim similar to one under § 489 would have been considered legal or equitable in nature at the time that the 1963 Constitution was adopted.

b. THE UNDERLYING CLAIM

A § 489 claim has similarities to two types of claims that existed before the adoption of the 1963 Constitution: shareholder derivative claims against the directors or those in control of the corporation and claims for corporate dissolution. We will discuss each in turn.

A § 489 claim allows a shareholder to bring suit against the directors or those in control of the corporation for fraud, illegality, or oppressive conduct. Shareholders have

---

[56] *Detroit Trust Co v Old Nat'l Bank of Grand Rapids*, 155 Mich 61, 65; 118 NW 729 (1908). For instance, at the time the 1963 Constitution was adopted, the relief sought could meaningfully bear on whether the nature of the claim was considered legal or equitable. See, e.g., *Teft*, 31 Mich at 371-372 ("The facts as given, and the case as shaped, point to just the action and relief peculiar to a court of law. They look to a single judgment for damages, and nothing else. The case, then, was really of legal, and not in strict propriety of equitable cognizance.").

long been able to bring a similar claim for fraud, illegality, abuses of trust, and other oppressive conduct on the part of those in control of the corporation through a shareholder derivative action. Whereas a shareholder in a derivative action sues on behalf of the corporation, a shareholder bringing a § 489 claim may sue the directors directly or derivatively—i.e., on his or her own behalf or on behalf of the corporation. However, even when a shareholder brings a claim on his or her own behalf under § 489, the claim is often derivative in nature because the remedies sought affect the corporation.[57] Accordingly, a § 489 claim is similar in nature to a shareholder derivative claim, and we must determine whether such a claim would be denominated equitable or legal in nature at the time the 1963 Constitution was adopted.

In *Miner v Belle Isle Ice Co*, this Court, considering a minority stockholder's action against the majority stockholder and the corporation, addressed the power of a court of equity to remedy the oppression of a minority shareholder.[58] After concluding that the majority stockholder's actions harmed the minority stockholder, the Court stated:

> It cannot be denied that minority stockholders are bound hand and
> foot to the majority in all matters of legitimate administration of the
> corporate affairs; and the courts are powerless to redress many forms of

---

[57] See *Moore*, 84 Mich App at 402 ("This suit was brought in equity by the plaintiff on behalf of herself as a minority shareholder. It also had some aspects of a shareholder derivative suit, relief sought was dissolution of the corporation and to have plaintiff's interest bought out.").

[58] *Miner v Belle Isle Ice Co*, 93 Mich 97, 98-108; 53 NW 218 (1892). The case was on appeal from a court sitting in chancery. Courts in chancery were those courts with equitable jurisdiction. See *Cady v Centreville Knit Goods Mfg Co*, 48 Mich 133, 135; 11 NW 839 (1882).

20

oppression, practiced upon the minority under a guise of legal sanction, which fall short of actual fraud.[59]

However, because the majority shareholder's actions were a breach of trust, the Court recognized that the " 'jurisdiction of a court of equity reaches such a case, to give such a remedy as its circumstances may require.' "[60]  The *Miner* Court concluded, "[A] court of equity will not so far tolerate such a manifest violation of the rules of natural justice as to deny him the relief to which his situation entitles him."[61]  It continued, "[A] court of equity, under the circumstances of this case, in the exercise of its general equity jurisdiction, has the power to grant to this complainant ample relief, even to the dissolution of the trust relations."[62]

Indeed, courts of equity have long heard shareholders' direct or derivative claims against the majority shareholders or directors for fraud, illegality, or other oppressive conduct.[63]  Since *Miner*, this Court has continued to recognize a court of equity's power

[59] *Miner*, 93 Mich at 114 (citation omitted and quotation marks).

[60] *Id*. at 115 (citation omitted).

[61] *Id*. at 117.

[62] *Id*.  Ultimately, the Court appointed a receiver to wind up the affairs of the corporation, required the majority stockholder to account for all money illegally paid by him or paid to him, ordered the majority stockholder to pay all those funds back to the corporation and all costs and fees incurred by the corporation in the proceedings, and ordered the majority stockholder to pay the complainant's costs for the proceedings. *Id*. at 117-118.

[63] See, e.g., *Nahikian v Mattingly*, 265 Mich 128; 251 NW 421 (1933); *Witter v LeVeque*, 244 Mich 83; 221 NW 131 (1928); *Crowe v Consolidated Lumber Co*, 239 Mich 300; 214 NW 126 (1927); *Thwing v Weibatch Liquid Scale Co*, 233 Mich 87; 206 NW 320 (1925); *Marcoux v Reardon*, 203 Mich 506; 169 NW 893 (1918); *Essex v Essex*, 141 Mich 200; 104 NW 622 (1905); *Edwards v Mich Tontine Investment Co*, 132 Mich 1; 92 NW 491 (1902); *Walsh v Goulden*, 130 Mich 531; 90 NW 406 (1902); *Flynn v Third Nat'l Bank of Detroit*, 122 Mich 642; 81 NW 572 (1900); *Keeney v Converse*, 99 Mich

"in case of fraud, abuse of trust, or misappropriation of corporate funds, at the instance of a single stockholder, to grant relief and compel a restitution . . . ."[64] Accordingly, a § 489 claim, insofar as it is similar to a shareholder derivative claim, would have been considered equitable in nature at the time the 1963 Constitution was adopted.

In addition, a § 489 claim is similar to a common-law claim for dissolution. At the time the 1963 Constitution was adopted, shareholders could bring a claim for dissolution of a corporation based on instances of fraud, illegality, or abuse of trust by other shareholders, or even deadlock between shareholders.[65] Historically, " '[t]he general rule . . . [was] that courts of equity have no power to wind up a corporation, in the absence of statutory authority.' "[66] However, by 1963, Michigan "ha[d] squarely aligned itself with those jurisdictions holding that a court of equity has inherent power to decree the dissolution of a corporation when a case for equitable relief is made out upon traditional equitable principles."[67] Thus, the nature of a § 489 claim—allowing a shareholder to seek dissolution if he or she can establish fraud, illegality, or oppressive

---

316; 58 NW 325 (1894).

[64] *Miner*, 93 Mich at 112. See also *Futernick v Statler Builders, Inc*, 365 Mich 378, 386; 112 NW2d 458 (1961); *Kimball v Bangs*, 321 Mich 394, 416; 32 NW2d 831 (1948); *Dean v Kellogg*, 294 Mich 200, 207; 292 NW 704 (1940); *Van Wie v Storm*, 278 Mich 632, 636; 270 NW 814 (1937).

[65] See *Levant v Kowal*, 350 Mich 232, 242-243; 86 NW2d 336 (1957).

[66] *Town v Duplex-Power Car Co*, 172 Mich 519, 528; 138 NW 338 (1912), quoting *Miner*, 93 Mich at 112.

[67] *Levant*, 350 Mich at 241.

22

conduct—is consistent with a common-law claim for dissolution, which was considered equitable in nature at the time the 1963 Constitution was adopted.[68]

Finally, claims similar to those under § 489, which may ultimately affect the shareholders and the corporation itself, typically involve difficult determinations of adequate relief. At the time the 1963 Constitution was adopted, it was recognized that "[a] suit in equity . . . is proper . . . if there are circumstances of great complication or difficulty in the way of adequate relief at law."[69] This is because "[j]uries cannot devise specific remedies, or safely deal with complicated interests, or with relief given in successive stages, or adjusted to varying conditions."[70] In this regard, this Court has recognized that "[c]ourts of law are inadequate to protect the rights and interests of creditors and stockholders."[71]

---

[68] A review of § 489 and its predecessor indicates that § 489 evolved from a common-law claim for dissolution. When the Legislature enacted the BCA through 1972 PA 284, former MCL 450.1825(1) allowed a circuit court to "adjudge the dissolution of, and liquidate the assets and business of, a corporation" for fraudulent, illegal, or willfully unfair and oppressive conduct on the part of a director or person in control of the corporation, thus making it similar to a common-law action for dissolution. However, the Legislature allowed a court under § 825(2) to fashion equitable remedies similar to those in § 489(1)(b) to (e) if the court did not believe that dissolution was proper. As discussed above, actions under § 825 were considered equitable in nature—a character that was preserved when the Legislature replaced § 825 with § 489, moving dissolution into and adding damages to the nonexhaustive list of remedies available to the circuit court in its discretion.

[69] *Second Mich Coop Housing Ass'n v First Mich Coop Housing Ass'n*, 358 Mich 252, 256; 99 NW2d 665 (1959).

[70] *Brown*, 75 Mich at 285.

[71] *Torrey v Toledo Portland Cement Co*, 150 Mich 86, 91; 113 NW 580 (1907) ("Equity can and should extend its strong and beneficent arm to protect the rights of all.").

In sum, we conclude that a § 489 claim, given its similarities to equitable shareholder derivative claims and claims for dissolution, would have been denominated equitable in nature at the time the 1963 Constitution was adopted.

## c. THE RELIEF SOUGHT

Having determined that the underlying claim of shareholder oppression would have been denominated equitable in nature at the time the 1963 Constitution was adopted, we must next consider the remedy sought by Madugula. From Madugula's complaint, it is unclear what remedies he sought specifically for his § 489 claim. However, by the time the trial began, Madugula was seeking a forced buyout of his stock and money damages under § 489(1)(e) and (f).

Despite Madugula's request for specific relief, the court was free under the language of the statute to grant relief as it considered appropriate, or none at all, even if he were to establish his claim of oppression.[72] The fact that the relief sought did not bind the court is consistent in nature with a claim before a court of equity because the remedies sought by a claimant do not bind a court of equity. That is,

> [t]he premises of a bill in equity—not its prayer—are determinative of the substance thereof, and this is but another way of saying that relief within scope of the bill is the final responsibility of the chancellor and that the prayer aids rather than dictates equity's decretal beneficence.[73]

[72] See MCL 450.1489(1).

[73] *Herpolsheimer v A B Herpolsheimer Realty Co*, 344 Mich 657, 665-666; 75 NW2d 333 (1956) (citations omitted). The *Herpolsheimer* Court recognized that if a "plaintiff [in equity] . . . establishes the right he has pleaded, equity's grace will come to him" and "[t]he shape of that relief will be formed by the chancellor according to germane conditions and equities existing at the time decree is made—not of necessity by the prayer of the bill." *Id*. at 665 (citation omitted).

24

Furthermore, a claim for which the court has broad power to fashion relief as the circumstances require is consistent with an action in equity.[74] Accordingly, we conclude that a claim, like one under § 489, that allows the court to shape the remedy regardless of what a claimant seeks would have been considered equitable in nature at the time the 1963 Constitution was adopted.

Moreover, the enumerated remedies available to the court in its discretion under § 489(1)(a) to (f) and, more specifically, those sought by Madugula in this case do not change our determination. As discussed previously, dissolution of the sort contemplated under § 489(1)(a) was awarded by courts of equity at the time the 1963 Constitution was adopted.[75] Moreover, § 489(1)(b) and (c) allow a court to cancel or alter corporate documents or resolutions; that relief is equitable in nature because "[e]quity has jurisdiction where complete protection and relief requires the cancellation of written instruments, the rescission of a transaction, or other specific relief of equitable character."[76] Section 489(1)(d) allows a court to direct or prohibit an act of the corporation or relevant persons. Section 489(1)(e) allows a court to compel the purchase at fair value of the shares of the shareholder. Although the final result of a forced buyout under § 489(1)(e) is a payment of money, the relief sought requires the court to compel a party to purchase shares.[77] Relief requiring a court to compel another to act, like that of

---

[74] *Miner*, 93 Mich at 115.

[75] *Levant*, 350 Mich at 241.

[76] *Haylor v Grigg-Hanna Lumber & Box Co*, 287 Mich 127, 133; 283 NW 1 (1938).

[77] See Bahls, *Resolving Shareholder Dissension: Selection of the Appropriate Equitable Remedy*, 15 J Corp L 285, 298 (1990) ("Although the statutes of many states expressly

25

§ 489(1)(d) and (e), has long been considered equitable in nature.[78]  Accordingly, the relief enumerated in § 489(1)(a) to (e) was within the province of a court of equity, not a court of law, at the time the 1963 Constitution was adopted.

Finally, the fact that § 489(1)(f) allows a court to award money damages, or the fact that Madugula sought damages in this action, does not change our conclusion regarding the equitable nature of a § 489 claim.  We recognize that claims for money damages were generally considered legal in nature at the time the 1963 Constitution was adopted.[79]  However, as noted above, these money damages are only one remedy available to a court in granting the relief it deems appropriate after a shareholder establishes a claim of oppression.  This is consistent with actions that are equitable in nature because "[a] court of equity may adapt its relief to the exigencies of the case, and, when nothing more is required, may order a sum of money to be paid to the plaintiff, or

---

authorize courts to require the majority shareholder or the corporation to purchase the interest of minority shareholders, courts at common law have always had the inherent equitable power to order share purchases.") (citations omitted).

[78] See, e.g., *Maxwell v Eddy Paper Co*, 232 Mich 356; 205 NW 111 (1925); *Stevenson v Sicklesteel Lumber Co*, 219 Mich 18; 188 NW 449 (1922); *Detroit Trust Co v Goodrich*, 175 Mich 168; 141 NW 882 (1913); *Graves v Brooks*, 117 Mich 424; 75 NW 932 (1898); *Hunter v Roberts, Throp & Co*, 83 Mich 63; 47 NW 131 (1890); *Bengley v Wheeler*, 45 Mich 493; 8 NW 75 (1881).

[79] *Teft*, 31 Mich at 371-372.

give him a personal judgment therefor, to be enforced by execution."[80]  Indeed, we have long recognized that a court sitting in equity could award damages when necessary.[81]

Therefore, although we recognize that damages are generally a legal remedy, we conclude that the availability of money damages does not change the overall equitable nature of a § 489 claim.  As previously discussed, our jurisprudence requires that the entire nature of the claim be considered, not just the relief sought, when determining whether there is a constitutional right to a jury trial.[82]  Giving the court the discretion to award money damages after a shareholder establishes a claim of oppression is wholly consistent with a court of equity's ability to adapt its relief to the circumstances of the case.

In sum, we hold that a § 489 claim would have been denominated equitable at the time the 1963 Constitution was adopted.  Therefore, no constitutional right to a jury trial

---

[80] *Grigg v Hanna*, 283 Mich 443, 460; 278 NW 125 (1938) (citations and quotation marks omitted).

[81] See, e.g., *Carson v Milcrow Motor Sales*, 303 Mich 86; 5 NW2d 665 (1942) (affirming in part a chancery court's award of damages);  *Backus v Kirsch*, 264 Mich 339; 249 NW 872 (1933) (affirming the chancery court's jurisdiction to award damages as incident to equitable relief); *Mich Sugar Co v Falkenhagen*, 243 Mich 698, 701-702; 220 NW 760 (1928) (remanding to the chancery court to for an award of damages after determining that specific performance was improper); *Rhoades v McNamara*, 135 Mich 644, 646; 98 NW 392 (1904) (determining that the chancery court's award of damages had not deprived the defendant of his constitutional right to a jury trial because the court of equity had jurisdiction over the controversy and "[h]aving jurisdiction, the court should dispose of every question involved"); *McLean v McLean*, 109 Mich 258, 261; 67 NW 118 (1896) (decreeing an award of $500 after concluding that an accounting would not be helpful).

[82] See *Abner A Wolf*, 385 Mich at 261.

exists under § 489.  Instead, a § 489 claim, in its entirety, must be tried before a court of equity.[83]

## 3.  APPLICATION

In his complaint, Madugula demanded a jury trial.  Through a motion in limine before trial, Taub argued that there was no right to a jury trial for Madugula's sole remaining claim under § 489 and requested that the claim be decided at a bench trial.  The trial court denied Taub's motion.  Thereafter, a jury heard Madugula's shareholder-oppression claim, and the trial court allowed the jury to consider whether damages or the equitable remedy of a forced stock buyout under § 489(1)(e) was proper.  After the jury awarded both in favor of Madugula, the trial court entered a judgment reflecting the jury's verdict.  After trial, Taub renewed his objection to the jury trial through a motion for a new trial.

The trial court abused its discretion by not granting Taub's motion for a new trial because Madugula did not have a right to a jury trial for his § 489 claim; instead, Taub had a right to have the controversy heard by a court of equity.[84]  Because of the equitable nature of Madugula's claim, the case should have been tried at a bench trial.  In addition, the trial court erred by allowing the jury to consider the purely equitable remedy of a forced buyout of stock.  As we noted previously, "[j]uries cannot devise specific remedies . . . ."[85]  That is, after Madugula established his claim for shareholder

---

[83] See *Brown*, 75 Mich at 284.

[84] *Id*.

[85] *Id.* at 285.

oppression, it was the job of the court sitting in equity to fashion an appropriate remedy under § 489, not the jury. Therefore, the trial court erred by allowing a jury trial on Madugula's § 489 claim.[86]

We recognize that MCR 2.509(D) allows a court to use an advisory jury to determine issues of fact.[87] In fact, this Court has long recognized the use of advisory juries in equity settings.[88] However, even when a court of equity uses an advisory jury to

---

[86] In his brief on appeal, Taub states that he conceded in the Court of Appeals that there was a right to a jury trial under § 489 for a claim of damages. Normally, Taub's concession would compel us to treat the issue as abandoned. See *Coddington v Robertson*, 160 Mich App 406, 412; 407 NW2d 666 (1987). However, we decline to be bound by Taub's concession in this case. Leaving in place the award of damages in favor of Madugula would improperly constrain the plenary authority of the court sitting in equity to determine on remand not only whether shareholder oppression occurred, but also what remedy is appropriate and to whom it should be given. Further, guidance in this area is necessary because courts have struggled to determine whether a right to a jury trial exists under § 489. See *Madugula v Taub*, unpublished opinion of the Court of Appeals, issued October 25, 2012 (Docket No. 298425); *Forsberg v Forsberg Flowers, Inc*, unpublished opinion per curiam of the Court of Appeals, issued December 5, 2006 (Docket No. 263762). Therefore, "we cannot consent to be bound by any concession of counsel on so important a question." *Busch v Nester*, 62 Mich 381, 384; 28 NW 911 (1886).

[87] MCR 2.509(D) reads:

Advisory Jury and Trial by Consent. In appeals to circuit court from a municipal court and in actions involving issues not triable of right by a jury because of the nature of the issue, the court on motion or on its own initiative may

(1) try the issues with an advisory jury; or

(2) with the consent of all parties, order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

[88] See, e.g., *McPeak v McPeak*, 457 Mich 311; 577 NW2d 670 (1998); *Business Men's Assurance Co v Marriner*, 223 Mich 1; 193 NW 907 (1923); *Marcoux*, 203 Mich 506; *Cole v Cole Realty Co*, 169 Mich 347; 135 NW 329 (1912); *Detroit United Railway v*

decide issues of fact, the court must still state its own findings of the facts and conclusions of law.[89] That did not occur in this case. Accordingly, we remand the case to the trial court to determine whether, on the present record, it can make the requisite findings of fact and conclusions of law under MCR 2.517(A) or whether a new trial is necessary.

## B. USE OF A SHAREHOLDER AGREEMENT TO ESTABLISH SHAREHOLDER OPPRESSION

We are also asked to determine whether evidence of a breach of a shareholder agreement can be used to establish shareholder oppression under § 489. That is, we must determine whether a private contractual agreement (the stockholders' agreement in this case) can give rise to shareholder interests that are actionable under § 489 if violated.

Section 489(3) reads:

"[W]illfully unfair and oppressive conduct" means a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure.[90]

---

*Smith*, 144 Mich 235; 107 NW 922 (1906); *Maier v Wayne Circuit Judge*, 112 Mich 491; 70 NW 1032 (1897).

[89] See *Ray v Mason Co Drain Comm'r*, 393 Mich 294, 301-302; 224 NW2d 883 (1975). See also MCR 2.517(A)(1) ("In actions tried on the facts without a jury or with an advisory jury, the court shall find the facts specially, state separately its conclusions of law, and direct entry of the appropriate judgment.").

[90] MCL 450.1489(3).

Notably, "willfully unfair and oppressive conduct" occurs when the conduct "substantially interferes with the interests of the shareholder as a shareholder." The parties quarrel over what a shareholder's interests as a shareholder actually entail.

This Court has never exhaustively listed the interests or rights that shareholders have as shareholders of a corporation. However, we have recognized that "[t]he relation between a corporation and its stockholders is contractual in its nature"[91] and that "[t]he charter of a corporation is its constitution. It prescribes the duties of stockholders and directors within the limits of the charter in the exercise of the power conferred upon them."[92] Beyond a corporation's articles of incorporation, we may also consider a corporation's bylaws and the governing statutes to determine a shareholder's interests.[93]

Under the BCA, a shareholder is "a person that holds units of proprietary interest in a corporation . . . ."[94] Through this interest in the corporation, a shareholder retains certain statutory rights that allow the shareholder to protect and gain from his or her interest as a shareholder, including, but not limited to, the right to vote, inspect the books, and receive distributions.[95] The BCA also allows shareholders to enter into voting agreements and shareholder agreements. Through a voting agreement, shareholders may

_____

[91] *Voigt v Remick*, 260 Mich 198, 204; 244 NW 446 (1932).

[92] *Id*. at 205.

[93] 12B Fletcher, Cyclopedia of Corporations, § 5715, p 23.

[94] MCL 450.1109(2).

[95] See MCL 450.1441, 450.1487(2), and 450.1345; see also MCL 450.1231, 450.1343, 450.1405, 450.1505(2), and 450.1511.

agree to modify how the shares held by them are voted.[96]  Through a shareholder

agreement, shareholders are able to modify several of the statutory rights and interests.[97]

A shareholder agreement, if it complies with the requirements of MCL 450.1488, "is

effective among the shareholders and the corporation . . . ."[98]  Thus, although the BCA

provides specific rights and interests to a shareholder as a shareholder, shareholders are

entitled to modify these rights and interests through shareholder agreements.

In this case, Taub argues that the Court of Appeals erred by concluding that a

breach of the contractual rights set forth in the stockholders' agreement could give rise to

a statutory shareholder-oppression claim under § 489.  However, Taub fails to recognize

that several of the rights modified in the stockholders' agreement were Madugula's rights

as a shareholder.  Under the stockholders' agreement, the shareholders agreed to elect

each other as the directors of the corporation, which is normally a right reserved to

shareholders.  The stockholders' agreement provided the shareholders with preemptive

rights.  It also modified the voting rights by instituting a 70 percent supermajority for

certain corporate actions.  Accordingly, as permitted under MCL 450.1461 and 450.1488,

the shareholders entered into a stockholders' agreement that modified the shareholders'

statutory rights and interests as shareholders.  Because these modified rights and interests

---

[96] MCL 450.1461.

[97] For example, shareholder agreements can modify the method of distributions, establish directors or officers, "govern[] the exercise or division of voting power by or between the shareholders and directors or by or among any of the shareholders or directors, including use of weighted voting rights or director proxies," change dissolution requirements, and more.  MCL 450.1488(1).

[98] *Id.*

32

are statutorily effective among shareholders and the corporation, evidence of a breach of those rights or interests may be evidence of shareholder oppression.[99] Thus, we agree with the Court of Appeals to the extent that it determined that a breach of the rights and interests contained in the stockholders' agreement could be evidence of shareholder oppression. However, it remains to the trial court to determine on remand whether and to what extent any breach of the stockholders' agreement evidences such oppression in this case.[100]

## IV. CONCLUSION

We hold that the language of MCL 450.1489 does not afford a claimant a right to a jury trial. Instead, the language indicates a legislative intent to have a § 489 claim heard by a court sitting in equity. We further hold that the Michigan Constitution does not afford a right to a jury trial for claims brought under § 489 because those claims would have been considered equitable in nature at the time the 1963 Constitution was adopted. Finally, we hold that violations of a shareholder agreement may constitute

---

[99] That is not to say that a violation of one of these rights automatically *establishes* a claim of shareholder oppression. Under § 489(3), the oppressive conduct must be "a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder." MCL 450.1489(3). In addition, "[w]illfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder." *Id*.

[100] We also asked the parties to address whether Madugula's interests as a shareholder were interfered with disproportionately by the actions of Taub given that Madugula retained his corporate shares and his corporate directorship. We need not answer this question in light of our decision to reverse the Court of Appeals' judgment and remand for further proceedings. The trial court will make this determination on remand.

33

evidence of shareholder oppression pursuant to § 489(3). Because the trial court erred by submitting Madugula's § 489 claim to the jury and allowing it to award an equitable remedy, the Court of Appeals erred by affirming the trial court's judgment. Therefore, we reverse the judgment of the Court of Appeals, reverse the judgment of the trial court in favor of Madugula, and remand the case to the trial court to determine whether, on the present record, sitting as a court of equity, it can make the requisite findings of fact and conclusions of law under MCR 2.517(A) or whether a new trial is necessary.

David F. Viviano
Robert P. Young, Jr.
Michael F. Cavanagh
Stephen J. Markman
Mary Beth Kelly
Brian K. Zahra
Bridget M. McCormack