*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

COREY C. BORDINE, KIMBERLY BORDINE
REYNOLDS, and PHILIP J. REYNOLDS,

UNPUBLISHED
November 30, 2023

Plaintiffs-Appellants,

v

No. 363655
Oakland Circuit Court
LC No. 2021-191794-CZ

KARL BORDINE, ALBERT BORDINE, and
CALVIN BORDINE,

Defendants-Appellees.

Before: MURRAY, P.J., and CAMERON and PATEL, JJ.

PER CURIAM.

In this dispute among shareholders of a corporation, plaintiffs appeal as of right the trial court's order granting summary disposition to defendants. We affirm in part and reverse in part the trial court's opinion and order, and remand for further proceedings consistent with this opinion.

## I. FACTS

Bordine Investment Co., Ltd. (BIC), is a Michigan corporation, which has five shareholders: Albert Bordine and his four children Kimberly Bordine Reynolds,[1] Corey Bordine, Karl Bordine, and Calvin Bordine. Albert and Karl are also directors of BIC. According to plaintiffs' complaint, plaintiffs own 50% of BIC's "Class B" shares and 36.7% of BIC's "Class A" shares. BIC owns real estate in Rochester Hills, Springfield Township, Mundy Township, and Genoa Township, and leases that real estate to Bordine Nursery, Ltd. (Bordine Nursery) under a Lease Agreement. At the time of the 2001 Lease Agreement, Kimberly, Corey, Karl, Calvin, and Albert were all shareholders in both BIC and Bordine Nursery. At present, Calvin, through his trust, is the sole owner of Bordine Nursery. According to plaintiffs, the rent paid by Bordine

---

[1] Philip Reynolds appears to be a plaintiff because of his status as a trustee of the Kimberly Bordine Reynolds irrevocable trust.

-1-

Nursery is BIC's only source of income except for a small amount of rental income related to a cell phone tower and perhaps a billboard lease.

On December 28, 2021, plaintiffs filed a notice of assignment to the Oakland County Business Court and a complaint against defendants, alleging: (1) as of June 2013, only Calvin and Albert remained Bordine Nursery shareholders, (2) in December 2014, at a meeting Calvin chose not to attend, BIC approved a rent increase of 3.5%, rather than the 5% allowed by the Lease Agreement, (3) at a December 7, 2016 shareholder meeting, Calvin voted against plaintiffs' requested rent increase, and Albert concurred, (4) Calvin and Albert refused to attend the December 20, 2019 shareholder meeting to prevent a vote on rent increase, and abstained from voting on rental increases on January 23, 2020, and June 24, 2021, a meeting Karl refused to attend, (5) Albert and Calvin boycotted an October 15, 2021 shareholder meeting, (6) "on October 26, 2021, Karl and Albert, as directors, increased the rent–not 5% or more as allowed by the lease–but rather by only 3% and only then, beginning January 1, 2022, even though the Metro Detroit CPI [Consumer Price Index] had increased 5.5% from a year ago," and (7) the fair market rent for the premises is four times the amount BIC charges Bordine Nursery. Further, plaintiffs allege Bordine Nursery, without authorization by BIC, has renovated and constructed new facilities on the properties, in violation of law and ordinance, and this is likely to invalidate any fire insurance for the property.

With these allegations, in Count 1 plaintiffs claim shareholder oppression in violation of MCL 450.1489, asserting defendants, as directors and persons in control of BIC, have substantially interfered with their interests as shareholders for several reasons, including failing to increase rent, terminate the lease, accept plaintiffs' buy-out offer, and attend shareholder meetings. In Count 2, plaintiffs claim defendants breached their fiduciary duties. And, in Count 3, plaintiffs claim Calvin aided and abetted by substantially assisting Karl and Albert in their breach of fiduciary duties.

Calvin filed his second motion for summary disposition of plaintiffs' complaint under MCR 2.116(C)(5) and (C)(8), asserting plaintiffs lack standing because their claims are based on alleged harm to BIC, and plaintiffs did not comply with the statutory requirements for filing derivative claims. Albert and Karl joined in the motion. Plaintiffs responded to the second motion for summary disposition, asserting: (1) their claim of shareholder oppression under MCL 450.1489 in Count 1 is direct, not derivative, and (2) the facts alleged in Counts 2 and 3 show direct injury to plaintiffs as shareholders of BIC.

Ultimately, the trial court granted defendants' second motion for summary disposition in a written opinion and order, stating, in pertinent part:

> Here, the Court agrees with Defendants. The acts alleged to interfere with Plaintiffs interests as shareholders primarily concern the lease that Plaintiffs are not a party to. Plaintiffs oppression claim (Count I) is based on the lease between BIC and the Nursery and the day-to-day management decisions of BIC. Injuries based on violation of the lease or for insufficient rent increases, permit violations, or insurance violations are injuries to BIC not Plaintiffs.
>
> As to Counts II and III, the only breaches of fiduciary duty alleged are again based on the lease between BIC and the Nursery. Plaintiffs cannot prevail on claims

-2-

based on the lease without showing injury to BIC because BIC is the only party to the lease.

Because the Court finds that Plaintiffs claims are derivative, Plaintiffs were required to comply with the statutory requirements of MCL 450.1492a and MCL 450.1493a. Plaintiffs do not allege that they have met those requirements. Plaintiffs therefore lack standing to pursue this action and summary disposition is warranted.

## II. ANALYSIS

### A. STANDING AND MCR 2.116(C)(5)

Plaintiffs first assert that the trial court erred in using MCR 2.116(C)(5) to grant summary disposition because defendants offered no evidence that plaintiffs lacked the capacity to sue. The interpretation of court rules is reviewed de novo. *AFP Specialties, Inc v Vereyken*, 303 Mich App 497, 504; 844 NW2d 470 (2014), citing *Henry v Dow Chem Co*, 484 Mich 483, 495; 772 NW2d 301 (2009).

MCR 2.116(C)(5) allows for summary disposition when "[t]he party asserting the claim lacks the legal capacity to sue." MCR 2.116(C)(5). Although defendants moved for summary disposition under both MCR 2.116(C)(5) and (C)(8), and the trial court cited both in its opinion and order granting summary disposition, the trial court based its decision on lack of standing, never specifically finding plaintiffs lacked the legal capacity to sue.

Legal capacity to sue involves the ability to initiate any lawsuit. In contrast, "[a] motion for summary disposition asserting as its basis the doctrine of standing invokes a prudential doctrine that focuses on whether a litigant is a proper party to request adjudication of a particular issue and not whether the issue itself is justiciable." *Pontiac Police & Fire Retiree Prefunded Group Health & Ins Trust Bd of Trustees v Pontiac No 2*, 309 Mich App 611, 620-621; 873 NW2d 783 (2015), quoting *Lansing Sch Educ Ass'n v Lansing Bd of Educ*, 487 Mich 349, 355; 792 NW2d 686 (2010) (quotation marks and citation omitted). Motions for summary disposition asserting lack of standing are appropriately reviewed under MCR 2.116(C)(8) or (C)(10). See *Pontiac Police*, 309 Mich App at 620-621.

Nevertheless, this Court has reviewed motions for summary disposition asserting lack of standing under MCR 2.116(C)(5). *Aichele v Hodge*, 259 Mich App 146, 152 n 2, 165; 673 NW2d 452 (2003); *Int'l Union UAW v Central Mich Univ Trustees*, 295 Mich App 486, 492-493; 815 NW2d 132 (2012). And, regardless, even " '[i]f summary disposition is granted under one subpart of the court rule when it was actually appropriate under another, the defect is not fatal and does not preclude appellate review as long as the record permits review under the correct subpart.' " *Bodnar v St John Providence, Inc*, 327 Mich App 203, 211-212; 933 NW2d 363 (2019), quoting *Detroit News, Inc v Policemen & Firemen Retirement Sys of the City of Detroit*, 252 Mich App 59, 66; 651 NW2d 127 (2002) (quotation marks and citation omitted). The pleadings permit us to review the parties' standing arguments under MCR 2.116(C)(8). Thus, if the trial court erred, the error was harmless.

### B. SHAREHOLDER OPPRESSION

-3-

Next, plaintiffs assert they have properly stated a claim for shareholder oppression under MCL 450.1489, and that claim is direct, not derivative. We agree with that assertion, at least in part.

A trial court's grant of summary disposition is reviewed de novo. *Int'l Union UAW*, 295 Mich App at 493. "In reviewing a motion for summary disposition pursuant to MCR 2.116(C)(5), this Court must consider the pleadings, depositions, admissions, affidavits, and other documentary evidence submitted by the parties." *Id.* at 493 (quotation marks and citations omitted). Further, standing is a question of law reviewed de novo. *Pontiac Police*, 309 Mich App at 621.

We also review de novo a trial court's grant of summary disposition under MCR 2.116(C)(8) "to determine whether the opposing party failed to state a claim upon which relief can be granted." *Charter Twp of Pittsfield v Washtenaw Co Treasurer*, 338 Mich App 440, 448; 980 NW2d 119 (2021), citing *Dalley v Dykema Gossett PLLC*, 287 Mich App 296, 304; 788 NW2d 679 (2010). As stated in *Dalley*, 287 Mich App at 304-305:

> A court may grant summary disposition under MCR 2.116(C)(8) if "[t]he opposing party has failed to state a claim on which relief can be granted." A motion brought under subrule (C)(8) tests the legal sufficiency of the complaint solely on the basis of the pleadings. *Corley v Detroit Bd of Educ*, 470 Mich 274, 277; 681 NW2d 342 (2004). When deciding a motion under (C)(8), this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). A party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions. *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994). Summary disposition on the basis of subrule (C)(8) should be granted only when the claim "is so clearly unenforceable as a matter of law that no factual development could possibly justify a right of recovery." *Kuhn v Secretary of State*, 228 Mich App 319, 324; 579 NW2d 101 (1998).

In an action based on a written contract, the contract is considered part of the pleadings for review under MCR 2.116(C)(8). *Laurel Woods Apartments v Roumayah*, 274 Mich App 631, 635; 734 NW2d 217 (2007).[2]

The trial court granted summary disposition of plaintiffs' shareholder oppression claim, citing *Murphy v Inman*, 509 Mich 132; 983 NW2d 354 (2022), and determined plaintiffs lacked standing to assert the claim because it is derivative. Plaintiffs argue they properly stated a claim for shareholder oppression under MCL 450.1489, and the trial court erred in dismissing that claim as derivative in accordance with *Murphy*, because this Court held in *Estes v Idea Engineering & Fabricating, Inc*, 250 Mich App 270, 649 NW2d 84 (2002), that such a claim is direct, not derivative.

---

[2] Although plaintiffs did not attach the Lease Agreement to their complaint, it was referenced in the complaint, and was attached to Calvin's reply brief in support of his second motion for summary disposition.

Generally, "a suit to enforce corporate rights or to redress injury to the corporation is a derivative suit; although it may be brought by the shareholder, the action itself belongs to the corporation." *Murphy*, 509 Mich at 160-161. In *Murphy*, which involved a breach-of-fiduciary-duty claim arising from a corporate cash-out merger agreement, the Court refined the framework for determining whether an action is direct or derivative, holding "courts must ask (1) who suffered the alleged harm, and (2) who would receive the benefit of any remedy recovered." *Murphy*, 509 Mich at 165. "If the answer to both questions is the corporation, the action is derivative. If the shareholder suffers the harm independent of the corporation and receives the remedy rather than the corporation, the action is direct." *Id*. However, under MCL 450.1489:

> A shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder. [MCL 450.1489(1).]

In *Estes*, a conflict panel[3] of this Court considered in part whether a prior version of MCL 450.1489 created a cause of action. *Estes*, 250 Mich App at 272. This Court stated:

> It is the judgment of this Court that § 489 is quite clear in its mandate: § 489 creates a statutory cause of action along with flexible discretionary remedies to shareholders of closely held corporations. Moreover, it is clear that this statutory cause of action for "oppression" in favor of minority shareholders who are abused by "controlling" persons, is a direct cause of action, not derivative, and though similar to a common-law shareholder equitable action, provides a separate, independent, and statutory basis for a cause of action. [*Estes*, 250 Mich App at 278.]

More recently, in *Madugula v Taub*, 496 Mich 685, 707; 853 NW2d 75 (2014), the Court described the nature of shareholder oppression claims, stating:

> Shareholders have long been able to bring a similar claim for fraud, illegality, abuses of trust, and other oppressive conduct on the part of those in control of the corporation through a shareholder derivative action. Whereas a shareholder in a derivative action sues on behalf of the corporation, a shareholder bringing a § 489 claim may sue the directors directly or derivatively—i.e., on his or her own behalf or on behalf of the corporation. However, even when a shareholder brings a claim on his or her own behalf under § 489, the claim is often derivative in nature because the remedies sought affect the corporation.

Thus, although derivative in nature because available remedies may affect the corporation, a properly stated claim under MCL 450.1489 may be direct, rather than derivative.

---

[3] A published opinion from a conflict panel "is binding on all panels of the Court of Appeals unless reversed or modified by the Supreme Court." MCR 7.215(J)(6).

Again, "[a] shareholder may bring an action in the circuit court of the county in which the principal place of business or registered office of the corporation is located to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." MCL 450.1489(1). Plaintiffs claim defendants' alleged actions amounted to willfully unfair and oppressive conduct, which means:

> a continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure. [MCL 450.1489(3).]

Therefore, to make out a claim, plaintiffs would have to prove defendants are directors or otherwise in control of the corporation, and their "acts amounted to a 'continuing course of conduct or a significant action or series of actions that substantially' interfered with their interests as shareholders and that defendants took those acts with the intent to interfere with their interests as shareholders." *Franks v Franks*, 330 Mich App 69, 99-100; 944 NW2d 388 (2019).

Plaintiffs allege Albert and Karl serve as BIC's directors, which neither disputes, and Calvin is a de facto director because he "and Albert regularly confer and operate BIC to primarily benefit Calvin and [Bordine] Nursery." For their shareholder-oppression claim specifically, plaintiffs allege defendants engaged in willfully unfair and oppressive conduct by: (1) refusing to increase the unreasonably low rent charged to Bordine Nursery, (2) refusing to require Bordine Nursery to obtain governmental and BIC approval for renovation and construction on the premises, (3) refusing to require Bordine Nursery to have valid fire and casualty insurance, (4) refusing to terminate the lease with Bordine Nursery, (5) retroactively approving construction and renovations without due diligence, (6) acting in bad faith by their valuation of BIC at $28 million, but refusing to accept plaintiffs' buy-out at that same valuation, (7) refusing "to recognize the approval by the shareholders to increase the rent to [Bordine] Nursery at shareholder meetings in January 2020 and June 2021, since the vote of only the voting shareholders is counted when a shareholder abstains," and (8) repeatedly boycotting shareholder meetings to prevent a quorum. Further, plaintiffs allege "Albert has been both a director of BIC and, until January 2020, a shareholder of [Bordine] Nursery, he had or has a clear conflict of interest, and has failed and refused to recuse himself from voting on matters regarding the relationship between BIC and Nursery[.]"

Viewing these allegations in a light most favorable to plaintiffs, we conclude that plaintiffs stated a direct claim for shareholder oppression, but not on the basis of every allegation. Plaintiffs' assertions regarding defendants' refusals to require Bordine Nursery to maintain appropriate insurance, and to gain approval before construction, are insufficient to state a direct cause of action because they do not interfere with plaintiffs' interests *as shareholders*. MCL 450.1489(3) In *Madugula*, 496 Mich at 718, the Court stated:

> This Court has never exhaustively listed the interests or rights that shareholders have as shareholders of a corporation. However, we have recognized

-6-

that "[t]he relation between a corporation and its stockholders is contractual in its nature" and that "[t]he charter of a corporation is its constitution. It prescribes the duties of stockholders and directors within the limits of the charter in the exercise of the power conferred upon them." Beyond a corporation's articles of incorporation, we may also consider a corporation's bylaws and the governing statutes to determine a shareholder's interests. [Citations omitted.]

Further:

Under the [Business Corporation Act, MCL 450.1101 *et seq*.] BCA, a shareholder is "a person that holds units of proprietary interest in a corporation . . . ." Through this interest in the corporation, a shareholder retains certain statutory rights that allow the shareholder to protect and gain from his or her interest as a shareholder, including, but not limited to, the right to vote, inspect the books, and receive distributions. The BCA also allows shareholders to enter into voting agreements and shareholder agreements. Through a voting agreement, shareholders may agree to modify how the shares held by them are voted. Through a shareholder agreement, shareholders are able to modify several of the statutory rights and interests. A shareholder agreement, if it complies with the requirements of MCL 450.1488, "is effective among the shareholders and the corporation . . . ." Thus, although the BCA provides specific rights and interests to a shareholder as a shareholder, shareholders are entitled to modify these rights and interests through shareholder agreements. [*Madugula*, 496 Mich at 718-719 (citations omitted).]

Although this alleged conduct, if true, may harm BIC, it does not interfere with plaintiffs' interests *as shareholders*. It does not affect their right to vote, to inspect books, or to receive distributions, and neither party has alleged it violates a shareholder agreement or corporate bylaws. Instead, this conduct would potentially violate the Lease Agreement, to which BIC and Bordine Nursery, and not the shareholders, are parties.

Likewise, plaintiffs' allegations regarding defendants' refusal to increase the rent or terminate the lease with Bordine Nursery are also insufficient to state a claim for shareholder oppression, because willfully unfair and oppressive conduct does *not* include "conduct or actions that are permitted by an agreement." MCL 450.1489(3). The Lease Agreement allows for renewal of the lease, stating:

The term of this Lease shall be automatically renewed for five (5) successive five (5) year terms [hereinafter collectively "Renewal Term(s)" or individually "Renewal Term"], from February 1 to January 31 of each year, unless either Landlord or Tenant gives notice of termination within sixty (60) days prior to the expiration of the initial term or each Renewal Term hereafter, as the case may be; *provided, however*, in the event Landlord elects to increase the Annual Rental as described below, Tenant may give notice of termination within ninety (90) days prior to the Adjustment Date for which such Annual Rental shall be increased.

And, if Bordine Nursery breaches the Lease Agreement, BIC *may* terminate the lease. Further, the Lease Agreement only allows, but does not require, BIC to increase Bordine Nursery's rent. It states:

> The Annual Rent may, at the Landlord's option and in the Landlord's complete and unfettered discretion, be increased effective as of February 1 of each year of the Initial Term or any Renewal Term (the "Adjustment Date") commencing February 1, 2002, by an amount which is no greater than five percent (5%) of the then current Annual Rental; provided, however, Landlord may only increase the Annual Rental by more than five percent (5%) if there is an increase in the Consumer Price Index ("Price Index") effective as of February 1 of the calendar year involved during the term of this Lease (the "Measure Date") commencing February 1, 2001 which is also greater than five percent (5%).

In contrast, viewing the allegations in a light most favorable to plaintiffs, plaintiffs have stated a claim for shareholder oppression with regard to their assertions that defendants have suppressed their voting power over a number of years, including by boycotting meetings, undervaluing the land and, therefore, their shares, and hidden conflicts of interest. If true, plaintiffs' allegations would demonstrate Albert and Karl, as directors, and Calvin, in concert with them, embarked on a course of conduct or series of actions that substantially interfered with plaintiffs' interests as shareholders—namely, the right to vote and to receive distributions, *Madugula*, 496 Mich at 718-719, with the intent to prevent them from voting in favor of a rent increase for Bordine Nursery, or maximizing the financial benefit of owning shares in BIC, whether through rent distribution or sale of their shares.

This Court's decision in *Franks* provides helpful insight. There, the plaintiffs claimed shareholder oppression for conduct they alleged to be willfully unfair and oppressive, including that the defendants stopped the payment of dividends and offered to purchase the plaintiffs' shares at an extremely low price. *Franks*, 330 Mich App at 101-105. This Court reasoned the evidence demonstrated, as a result of these actions, that the plaintiffs stopped receiving the only benefit they could derive from ownership of their shares—the payment of regular dividends, and permitted an inference that the defendants had embarked on a plan to devalue the plaintiffs' shares. *Id*. at 101-103. Similarly, here plaintiffs allege a purposeful undervaluing of their shares. And, although not perfectly analogous to *Franks*, because the plaintiffs there were nonvoting shareholders, plaintiffs' allegations, if true, would demonstrate defendants' efforts to essentially strip plaintiffs of their voting rights by boycotting meetings, abstaining from voting, and voting as a block.

## C. BREACH OF FIDUCIARY DUTY

In a somewhat similar vein, plaintiffs argue that their claims in Counts 2 and 3 are not derivative because they alleged they suffered direct harm and would receive a direct benefit of any remedy. Again, we agree in part.

In Count 2, plaintiffs incorporate the allegations included earlier in the complaint, and assert defendants breached their fiduciary duties "as indicated above." And, in Count 3, plaintiffs incorporate the allegations included earlier in their complaint, and assert "Calvin had knowledge of the violation of fiduciary duty by defendants Karl and Albert and gave substantial assistance in

effecting that wrong." Assuming plaintiffs intend to base their breach of fiduciary duty and aiding and abetting breach of fiduciary duty claims on the same allegations forming the basis of their shareholder-oppression claim, the trial court correctly determined that plaintiffs lacked standing to assert their breach-of-fiduciary-duty claims, insofar as they relied on allegations related to the Lease Agreement.

Even viewing the complaint in a light most favorable to plaintiffs, their claims for breach of fiduciary duty based on allegations regarding defendants' refusal to increase rent, terminate the lease with Bordine Nursery, require Bordine Nursery to maintain appropriate insurance, and require Bordine Nursery to gain approval before construction, are derivative. If true, both BIC directly, and plaintiffs as shareholders in BIC, would suffer harm from these allegations, and would receive the benefit of any remedy recovered. *Murphy*, 509 Mich at 165. An increase in rent, for example, would presumably increase BIC's profits and potentially, distributions to plaintiffs. Likewise, refusing to increase rent could potentially suppress BIC's profits. And, termination of the Lease Agreement to either sell the land, or lease to someone other than Bordine Nursery, could increase the value of BIC, as well as distributions to its shareholders. The same is true for requiring Bordine Nursery to maintain appropriate insurance and request approval for construction as required by its Lease Agreement with BIC. Because plaintiffs offer no argument that they followed the statutory requirements for bringing derivative claims, MCL 450.1492a; MCL 450.1493a, the trial court appropriately granted summary disposition of plaintiffs' claims of breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on these bases.

However, the trial court erred when it determined plaintiffs lacked standing to assert Counts 2 and 3 on the basis of their allegations that defendants suppressed their voting power over a number of years, including boycotting meetings and undervaluing the land and, therefore, their shares. Viewing these allegations in a light most favorable to plaintiffs, and for similar reasons as those discussed earlier in this opinion, they state direct claims for breach of fiduciary duty and aiding and abetting that breach.

To state a claim for breach of fiduciary duty, a defendant must allege: "(1) the existence of a fiduciary duty, (2) a breach of that duty, and (3) damages caused by the breach of duty." *Highfield Beach at Lake Mich v Sanderson*, 331 Mich App 636, 666; 954 NW2d 231 (2020). "[U]nder Michigan common law, corporate directors owe fiduciary duties directly to their shareholders." *Murphy*, 509 Mich at 152.

> Colloquially, directors are required to act with due care, with loyalty, and in good faith. These amorphous concepts do not, strictly speaking, encapsulate all that is required of directors acting in their fiduciary capacity. For example, directors are required to exercise candor toward the corporation's shareholders and must disclose all material facts within their knowledge that may influence shareholder action. And, given that a corporation is carried on primarily for the profit of its shareholders, we have stated that the "essence" of directors' fiduciary duties is to "produce to each stockholder the best possible return for his [or her] investment." [*Id*. at 148-149.]

Plaintiffs allege Karl and Albert, as BIC's directors, owed them, as BIC shareholders, fiduciary duties, which include the duty to act with loyalty and in good faith, *Murphy*, 509 Mich

at 148-149, and breached those duties by suppressing their vote, and undervaluing the land in an effort to buy plaintiffs' shares for less than they are worth. And, unlike their allegations regarding rent payments and compliance with the Lease Agreement, on the basis of these allegations, plaintiffs, as opposed to BIC, would suffer the harm and receive the remedy. For example, plaintiffs, rather than BIC, would benefit from a fair sale of their shares.

Further, "Michigan law recognizes a cause of action for aiding and abetting a breach of fiduciary duty." *Nicholl v Torgow*, 330 Mich App 660, 675; 950 NW2d 535 (2019).

> "Where a person in a fiduciary relation to another violates his duty as fiduciary, a third person who participates in the violation of duty is liable to the beneficiary." The essential elements required for aiding-and-abetting liability are: (1) that an independent wrong occurred, (2) that the aider or abettor had knowledge of the wrong's existence, and (3) that substantial assistance was given to effecting that wrong. [*Id*. (citations omitted).]

Plaintiffs allege Calvin, though not a director himself, provided substantial assistance to Karl and Albert's efforts to breach their fiduciary duties, including by conferring with them to operate BIC in a way that primarily benefits Calvin and Bordine Nursery, abstaining from voting on rental increases, and refusing to attend meetings to prevent a quorum. Construing these allegations in a light most favorable to plaintiffs, plaintiffs have at least stated a claim for aiding and abetting breach of fiduciary duties.

## D. BUSINESS COURT

Finally, plaintiffs assert that this case belongs in Oakland County Business Court, and should be remanded there for further proceedings. Specifically, they argue the Business Court has jurisdiction over "business or commercial disputes," defined at both MCL 600.8031(1)(c) and (2)(c). Under MCL 600.8031(2)(c), a business or commercial dispute includes those actions involving the internal organization of business entities and the rights or obligations of shareholders.

Questions of statutory interpretation are reviewed de novo. *Blackwell v City of Livonia*, 339 Mich App 495, 501; 984 NW2d 780 (2021). Additionally, "[w]hether a court has subject-matter jurisdiction is a question of law reviewed de novo." *Hillsdale Co Senior Servs, Inc v Hillsdale Co*, 494 Mich 46, 51; 832 NW2d 728 (2013).

Under the Business Court Act, MCL 600.8031 *et seq*., a business court has jurisdiction over business and commercial disputes for which equitable or declaratory relief is sought. MCL 600.8035(1). "An action *must* be assigned to a business court if all or part of the action includes a business or commercial dispute." MCL 600.8035(3).

MCL 600.8031 states, in pertinent part:

(1) As used in this section to section 8047:

* * *

(c) "Business or commercial dispute" means any of the following:

(*i*) An action in which all of the parties are business enterprises, unless the only claims asserted are expressly excluded under subsection (3).

(*ii*) An action in which 1 or more of the parties is a business enterprise and the other parties are its or their present or former owners, managers, shareholders, members of a limited liability company or a similar business organization, directors, officers, agents, employees, suppliers, guarantors of a commercial loan, or competitors, and the claims arise out of those relationships.

(*iii*) An action in which 1 of the parties is a nonprofit organization, and the claims arise out of that party's organizational structure, governance, or finances.

(2) Business or commercial disputes include, but are not limited to, the following types of actions:

(a) Those involving the sale, merger, purchase, combination, dissolution, liquidation, organizational structure, governance, or finances of a business enterprise.

(b) Those involving information technology, software, or website development, maintenance, or hosting.

(c) Those involving the internal organization of business entities and the rights or obligations of shareholders, partners, members, owners, officers, directors, or managers.

(d) Those arising out of contractual agreements or other business dealings, including licensing, trade secret, intellectual property, antitrust, securities, noncompete, nonsolicitation, and confidentiality agreements if all available administrative remedies are completely exhausted, including, but not limited to, alternative dispute resolution processes prescribed in the agreements.

(e) Those arising out of commercial transactions, including commercial bank transactions.

(f) Those arising out of business or commercial insurance policies.

(g) Those involving commercial real property.

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *Badeen v PAR, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014). "The first step in that determination is to review the language of the statute itself. Unless statutorily defined, every word or phrase of a statute should be accorded its plain and ordinary meaning, taking into account the context in which the words are used." *Spectrum Health Hosp v Farm Bureau Mut Ins Co of Michigan*, 492 Mich 503, 515; 821 NW2d 117 (2012) (quotation marks and citation omitted). " 'Although a phrase or a statement may mean one thing when read in isolation, it may mean something

substantially different when read in context.' When reviewing a statute, courts should avoid a construction that would render any part of the statute surplusage or nugatory." *Badeen*, 496 Mich at 81 (citations omitted).

Looking at the plain language of the statute, MCL 600.8031(1)(c) provides the definition of a business or commercial dispute, as indicated by use of the word "means" after the phrase "[b]usiness or commercial dispute." Contrary to plaintiffs' interpretation, MCL 600.8031(2) does not then, immediately after that definition, provide a separate set of definitions. Rather, it provides a list of the "*types of actions*" business or commercial disputes may "*include*." Reading subsection 2 in context confirms this interpretation. After the list in MCL 600.8031(2) of the types of actions a business or commercial dispute may *include*, MCL 600.8031(3) lists the types of actions expressly *excluded*. Further, there would be no reason for the Legislature to use two back-to-back subsections of the statute to define a business or commercial dispute when it could just use one. And, had it intended to do so, it would make the most sense to keep the language consistent, using the word "means" again in MCL 600.8031(2), to describe business or commercial disputes. Because this case does not involve business enterprises as outlined in MCL 600.8031(1)(c), it cannot be remanded to the business court.

### E. CONCLUSION

We affirm in part, and reverse in part, the trial court's order granting summary disposition of plaintiffs' claims, and remand to the trial court for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Christopher M. Murray
/s/ Thomas C. Cameron
/s/ Sima G. Patel