*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SONDRA L. PERO, Personal Representative of the
ESTATE OF CHARLES EDWARDS,

       Plaintiff-Appellant,

v

DAVID EDWARDS, NAN EDWARDS, AMY
EDWARDS, CHRIS COCHRANE, the ESTATE OF
SALLY BUTLER, and the LAND COMPANY,

       Defendants-Appellees.

UNPUBLISHED
July 29, 2025
3:26 PM

No. 368897
Berrien Circuit Court
LC No. 2022-000016-CB

Before: CAMERON, P.J., and REDFORD and GARRETT, JJ.

PER CURIAM.

Plaintiff appeals the trial court's judgment finding that defendants engaged in shareholder oppression when they took actions adverse to plaintiff's status as a shareholder of defendant, the Land Company (TLC).[1] We affirm, but remand to the trial court to determine whether changes made to the shareholder debt constitute shareholder oppression.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff and the individual defendants were corporate directors and shareholders of TLC, which was formed in the early 1980s for the purpose of holding several parcels of land ("the property"). The property was TLC's only asset, and was used to operate Cedar Lodge Recreation Services (Cedar Lodge). Amy and Chris ran Cedar Lodge and lived on the property. Throughout its years of operation, Cedar Lodge paid rent equivalent to TLC's property taxes to TLC on behalf of itself, Amy, and Chris, and paid for nearly all maintenance and capital improvements on the property.

---

[1] Given that several parties share a last name, individual defendants are identified by their first names when appropriate.

-1-

After its initial formation, TLC issued shares to its shareholders. But over the years, the shares changed hands several times after various shareholders died, sold their shares back to TLC, and made internal transfers. TLC also operated largely informally, and rarely produced a profit. Thus, TLC relied heavily on income generated by shareholder loans for its operation. Because there were gaps in TLC's record keeping, several of the loans could not be attributed to specific shareholders. Because of this, when preparing TLC's tax returns, TLC's accountant distributed and accounted for shareholder debt by allocating debt to each shareholder based on their respective shareholder interest percentages and using financial information provided by David, TLC's treasurer.

Eventually, the parties began to disagree about the issuance and transfer of shares, amount of shareholder debt, and use of TLC's property. These disagreements came to a head in late 2021, and the shareholders held a meeting without plaintiff and held an election for TLC's board members and officers; plaintiff was not given the opportunity to vote. As a result, plaintiff was removed as TLC's president—a role he had held for nearly 20 years. Defendants also passed a motion to issue shares to shareholders in exchange for sweat equity, an issue plaintiff had previously opposed.

Plaintiff later initiated this action, alleging that defendants engaged in shareholder oppression under MCL 450.1489(1)(f). As a result of the lawsuit, David reviewed TLC's records to track the transfer of shares and amount of shareholder loans. On the basis on his findings, David contacted TLC's accountant, instructing him to reduce the number of shares reported on TLC's tax returns and reallocate the amount of debt owed to each shareholder. Accordingly, TLC's 2021 and 2022 tax returns showed a decrease in plaintiff's shareholder interest percentage and loan balance. Plaintiff did not sell any stock or receive payments from TLC to reduce his loan balance.

After a bench trial, the trial court found that defendants committed shareholder oppression by ousting plaintiff as TLC's president without allowing him to participate in the vote and subsequently decreasing plaintiff's shareholder interest percentage. It found no cause of action regarding plaintiff's other allegations of shareholder oppression. This appeal followed.

## II. STANDARDS OF REVIEW

"This Court reviews for clear error the trial court's factual findings following a bench trial . . . ." *Patel v Patel*, 324 Mich App 631, 633; 922 NW2d 647 (2018). "A finding is clearly erroneous where, although there is evidence to support the finding, the reviewing court on the entire record is left with the definite and firm conviction that a mistake has been made." *Id.* (quotation marks and citation omitted). "[T]his Court must afford deference to the trial court's superior ability to judge the credibility of the witnesses who appear before it." *Id.*

## III. SHAREHOLDER OPPRESSION

Plaintiff contends that the trial court erred because it: (1) misapplied the standard for shareholder oppression; (2) failed to find that defendants engaged in shareholder oppression when they did not produce a profit and refused to make distributions to plaintiff as one of TLC's shareholders; and (3) failed to address whether "manipulation" of shareholder debt owed to

plaintiff constituted shareholder oppression. We disagree with plaintiff's first two arguments, but agree that the trial court failed to address the issue regarding the shareholder debt.

## A. DUTY TO PRODUCE A PROFIT & MAKE DISTRIBUTIONS

Under the Business Corporation Act (BCA), MCL 450.1101 *et seq.*, a shareholder is "a person that holds units of proprietary interest in a corporation . . . ." MCL 450.1109(2). "Through this interest in the corporation, a shareholder retains certain statutory rights that allow the shareholder to protect and gain from his or her interest as a shareholder, including, but not limited to, the right to vote, inspect the books, and receive distributions." *Madugula v Taub*, 496 Mich 685, 718; 853 NW2d 75 (2014). A shareholder may bring an action "to establish that the acts of the directors or those in control of the corporation are illegal, fraudulent, or willfully unfair and oppressive to the corporation or to the shareholder." MCL 450.1489(1).

Plaintiff claims that defendants' alleged actions amounted to willfully unfair and oppressive conduct. Willfully unfair and oppressive conduct constitutes:

> [A] continuing course of conduct or a significant action or series of actions that substantially interferes with the interests of the shareholder as a shareholder. Willfully unfair and oppressive conduct may include the termination of employment or limitations on employment benefits to the extent that the actions interfere with distributions or other shareholder interests disproportionately as to the affected shareholder. The term does not include conduct or actions that are permitted by an agreement, the articles of incorporation, the bylaws, or a consistently applied written corporate policy or procedure. [MCL 450.1489(3).]

Therefore, plaintiff was required to prove that defendants (1) are directors or otherwise in control of the corporation, (2) whose "acts amounted to a 'continuing course of conduct or a significant action or series of actions that substantially' interfered with [his] interests" as a shareholder, and (3) "that [they] took those acts with the intent to interfere with [his] interests as [a] shareholder[]." *Franks v Franks*, 330 Mich App 69, 99-100; 944 NW2d 388 (2019), quoting MCL 450.1489(3).

The trial court expressly relied on this standard when rendering its judgment. However, plaintiff claims the trial court failed to acknowledge that corporate directors owe a duty to shareholders to produce a return so that they can issue distributions. While it is true that corporate directors owe a duty to produce returns for shareholders, *Murphy v Inman*, 509 Mich 132, 148-149; 983 NW2d 354 (2022), this is in relation to a director's fiduciary duties. Thus, the caselaw on which plaintiff relies applies to claims for *breach of fiduciary duties*, not shareholder oppression, are thus inapplicable to this case. Hence, the trial court did not err by failing to consider this standard. For this same reason, plaintiff's argument that the trial court erred "by not holding the individual Defendants to the standard of producing a return for shareholders," and

issuing distributions, also fails, because, as explained, the duty to produce a return for shareholders applies to claims for breach of fiduciary duties, *not* shareholder oppression. See *id.*[2]

## B. SHAREHOLDER DEBT

Plaintiff also asserts that the trial court erred because it failed to address whether David's "manipulation" of shareholder debt owed to plaintiff constituted shareholder oppression. We agree.

The record shows that, between the 2020 and 2021 tax years, the shareholder loan balances decreased for plaintiff, David and Nan, and Amy, and increased for Sally and Chris. TLC's accountant explained that these changes were because he used only two decimals when calculating the 2021 shareholder interest percentages, rather than the five decimals used in the 2020 calculations. Thus, there is no indication that defendants "manipulated" the shareholder debt to plaintiff's detriment between 2020 and 2021.

However, David explained that, after plaintiff initiated this action, he began "forensically going back through the loans" and discovered that there were "anomalies" in the number of shares issued and loans that TLC's accountant had mistakenly attributed to the then-existing shareholders. He contacted TLC's accountant in 2022 about the number of shares and gave him a summary sheet detailing TLC's financial activity, reporting that the number of shares needed to be lowered from 501 to 485. Using the financial information from David, TLC's accountant "specifically allocate[d] the majority of that $240,000 [in unallocated debt] to individual shareholders." About $50,000 could not be allocated. Accordingly, TLC's 2022 tax returns reflected significant changes to the loan balances for each shareholder. At a subsequent shareholders meeting, however, the parties were unable to reconcile the amount owed to the individual shareholders as a result of restricted loans, shareholder loans, and sweat equity.

The record is unclear as to what records David and TLC's accountant used when determining the "corrected" amount of outstanding shareholder loans. It is also unclear how the accountant allocated the loans to the individual shareholders when determining the amount of shareholder debt owed to each individual for the 2022 tax year. Moreover, the parties disputed the outstanding debt owed to the individual shareholders only two months before trial. Because the

---

[2] We note that, in his request for relief, plaintiff asks this Court to find that defendants engaged in shareholder oppression "by not requiring a lease of TLC property," and "by not requiring insurance to protect TLC (and thus, the value of Plaintiff's interest in TLC)[.]" Plaintiff, however, did not include these arguments in his statement of questions presented. Further, plaintiff fails to adequately provide support for his argument that, or explain how, the absence of a lease and insurance constitute shareholder oppression. These arguments are therefore abandoned. *Maple BPA, Inc v Bloomfield Charter Twp*, 302 Mich App 505, 517; 838 NW2d 915 (2013) ("A party abandons an issue when it fails to include the issue in the statement of questions presented in its appellate brief and fails to provide authority to support its assertions.").

trial court did not address this issue in its judgment, it must determine whether the changes made to the shareholder loans in the 2022 tax return constitute shareholder oppression.

Affirmed but remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ James Robert Redford
/s/ Kristina Robinson Garrett